**UNITED STATES of America, Plaintiff–Appellee,**

**v.**

**ALL ASSETS AND EQUIPMENT OF WEST SIDE BUILDING CORPORATION, 1801 West Adams Street, 1803 West Adams Street, 1251–55 West Adams Street, and 207, 209, 211 South Throop, Defendants,**

**Clara Penny and West Side Building Corporation, Claimants– Appellants.**

No.  97–2164.

United States Court of Appeals, Seventh Circuit.

Argued May 13, 1999.

Decided Aug. 6, 1999.

Joseph M. Ferguson (argued), Office of United States Attorney, Civil Division, Appellate Section, Chicago, IL, for Plaintiff–Appellee.

Freddrenna M. Lyle, Lyle, Slaughter & Brewer, Chicago, IL, for Defendants.

Andrew M. Cohen (argued), Chicago, IL, for Claimants–Appellants.

Before BAUER, MANION, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Clara Penny and West Side Building Corporation ("claimants") return to this Court challenging the forfeiture of their real and personal property. The government claimed that the property was the fruit of alleged narcotics distribution activities in which Penny and her family engaged and seized the property ex parte pursuant to 21 U.S.C. §§ 881(a)(5) and (6). During the first round of this case, the district court denied the claimants' motion to reconsider its grant of summary judgment in favor of the United States. We affirmed this decision in part, but remanded it to the district court so that the court could determine if any exigent circumstances existed to justify the seizure of the

property without a hearing and, if not, the extent to which the personal property was subject to forfeiture on an ex parte basis and the amount of damages sustained to claimants due to the deprivation of both their real and personal property. *See United States v. All Assets and Equip. of West Side Bldg. Corp.*, 58 F.3d 1181, 1193–94 (7th Cir.1995). Claimants now assert that the district court failed to follow our directions when it concluded that although exigent circumstances justifying an ex parte forfeiture did not exist, claimants did not sustain any damages beyond that of lost rent for which the government had already agreed to compensate them and awarded only one dollar in nominal damages. We disagree with claimants and affirm the district court's decision.

The underlying facts of this case are sufficiently described in our previous consideration of this matter in *West Side Bldg. Corp.*, 58 F.3d at 1183–86, and we see no need to repeat them here. In that earlier proceeding, we specifically stated:

> On remand, the district court is directed to determine whether there were exigent circumstances justifying the seizure of claimants' real property without an adversary hearing. If the district court determines that such exigent circumstances did not exist, it must determine the damages, if any, suffered by the claimants as a result of the deprivation of their real property from the date of the seizure to the date of the first adversary hearing. If the claimants persist in their contention that other seized property was not subject to forfeiture on an ex parte basis, the district court will evaluate that claim according to the methodology outlined in *Good*.

*Id.* at 1193–94.

On remand the district court first determined that no exigent circumstances existed to justify the seizure of the claimants' real property. It concluded that due process entitled claimants to a hearing prior to the seizure of the personal property. Because they had not received such a

hearing, the court found they might be entitled to receive damages. By this time, the government and claimants had reached a settlement regarding some of the damages. The government agreed to pay claimants more than $91,000 in lost rents that had accrued between the seizure and the hearing regarding the property. In addition to these rents, however, claimants also sought damages exceeding the lost rent caused by the deprivation of their real and personal property. The court, then, referred the matter to the magistrate judge for a report and recommendation regarding these potential damages.

The magistrate judge made three determinations. First, he concluded that the ex parte seizure of the personal property was justified because of the mobility of the items. In addition, he reported that claimants had failed to provide evidence of damages relating to the temporary loss and recommended that the district court deny the claim for illegal deprivation of the personal property. Second, the magistrate judge found that the agreement between the government and claimants resolved only the issue of damages with regard to lost rent, but did not constitute a waiver of claimants' other claims, such as expenses accrued or lost income. Third, the magistrate judge concluded that even though claimants had not waived their claims to recover damages other than lost rent, the amount of damages sought was not supported by a valid claim. Thus, he recommended that the district court award no compensatory damages, but only nominal damages because claimants had been deprived of their constitutional right to procedural due process. The district court adopted the magistrate judge's report and awarded only one dollar in nominal damages to claimants.

Claimants assert that the district court ignored the Supreme Court's holding in *United States v. James Daniel Good Real Property*, 510 U.S. 43, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993), when it denied their claims for compensatory damages regard-

ing their personal properties and damages arising out of the deprivation of real property beyond those associated with the lost rent. The government suggests this issue should be divided into two separate questions—(1) whether *Good* applies to personal property and (2) whether the district court erred in awarding nominal damages to claimants.[1]

■ We review the question of whether *Good* applies to personal property—a constitutional claim—*de novo*. *See United States v. Kirschenbaum*, 156 F.3d 784, 792 (7th Cir.1998). We will affirm a district court's award of damages—a finding of fact—unless we find clear error. *See Okaw Drainage Dist. v. National Distillers and Chem. Corp.*, 96 F.3d 1049, 1051 (7th Cir.1996).

■ First, we consider whether the Supreme Court's holding in *Good* applies to personal property. In that case, the Supreme Court specifically held that:

the seizure of *real property* . . . is not one of those extraordinary instances that justify the postponement of notice and hearing. Unless exigent circumstances are present, the Due Process Clause requires the Government to afford notice and a meaningful opportunity to be heard before seizing *real property* subject to civil forfeiture.

*Good*, 510 U.S. at 62, 114 S.Ct. 492 (footnote omitted) (emphasis added). As we noted during our initial consideration of this case, the Court also used language that "might suggest that the holding in *Good* will later spread its dominion to property other than realty." *West Side Bldg. Corp.*, 58 F.3d at 1192 (footnote omitted). The Court stated that it " 'tolerate[d] some exceptions to the general rule requiring predeprivation notice and hearing' in extraordinary situations in which important governmental interests were at

stake." *Id.* (quoting *Good*, 510 U.S. at 53, 114 S.Ct. 492). Even though other circuits have stated that *Good's* due process requirements apply only to seizures of real property, *see, e.g., United States v. One Parcel of Real Property Described as Lot 41, Berryhill Farm Estates*, 128 F.3d 1386, 1392 (10th Cir.1997); *United States v. $129,727.00 U.S. Currency*, 129 F.3d 486, 493 (9th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1399, 140 L.Ed.2d 657 (1998); we need not address the issue, because the seizure of the personal property here involved exigent circumstances.

We noted during our initial consideration of this case that it would be rather difficult for claimants to establish that *Good* should be extended to the personal property seized by the government.

In this case, however, extending *Good* to property other than the realty at stake seems, at best, a difficult task for the claimants. The other property—bank accounts and automobiles—possesses attributes of liquidity and mobility that would make the possibility of conversion substantial. Therefore, it would appear that the considerations that justified the seizure of the yacht in [*Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 679, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974) ], would also permit initial seizure on an ex parte basis here. Because this matter has never been addressed by the district court, a proper respect for its prerogatives requires that we permit it to address the issue if the defendants should choose to pursue the issue. However, we emphasize that, in evaluating any such submission by the defendants, the district court must give considerable weight to the possibility of the property's disappearing if the government is not allowed to proceed on an ex parte basis.

1. In addition, the government raised the issue of whether the United States is subject to suits such as this one for damages under the Fifth Amendment. Because the government did not directly appeal this issue, we need not reach this thorny question of sovereign immunity.

*West Side Bldg. Corp.*, at 1192–93 (footnotes omitted). The claimants have not presented us with any additional evidence that would alter our earlier analysis.

In reaching its decision in *Good*, the Supreme Court employed the balancing test of *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), in which the private interests affected by the government action, the risk of erroneous deprivation through the procedures used, and the probable value of additional safeguards are weighed against the government's interest and the administrative burden additional procedures would require. *See Good*, 510 U.S. at 53, 114 S.Ct. 492. The Supreme Court reached its conclusion that pre-deprivation notice and hearing are required by the Fifth Amendment in cases of real property because the concerns of the government in the loss of the property are less immediate than they would be in the case of property that is mobile. As the Court succinctly stated: "[R]eal property cannot abscond." *Id.* at 57, 114 S.Ct. 492. In *Calero–Toledo*, the Supreme Court applied an analogous reasoning and concluded that the mobility of property seized, a yacht, that "could be removed to another jurisdiction, destroyed, or concealed, if advance warning of confiscation were given ... presents an 'extraordinary' situation in which postponement of notice and hearing until after seizure [does] not deny due process." 416 U.S. at 679–80, 94 S.Ct. 2080 (footnote omitted).

We need not decide as a general proposition of law whether the holding in *Good* should be extended to all cases involving personal property because in this case the district court adopted the magistrate judge's findings that each item of personal property was "sufficiently mobile" to permit ex parte seizure. Because the personal property involved in this forfeiture proceeding—home appliances and furniture[2]—

is more like the yacht in *Calero–Toledo* than the real property in *Good*, the district court did not err in reaching its conclusion that both as a factual and legal matter the pre-deprivation process required by *Good* did not apply to the seizure of claimants' personal property.

■ The second issue raised by claimants is the adequacy of the damages arising out of the lack of due process before the government seized their real property, specifically, whether compensatory damages should have been awarded and whether the nominal damages were adequate. Compensatory damages are recoverable for constitutional violations, but only if the party seeking these damages can demonstrate actual injury resulting from the violation. *See Smith v. City of Chicago*, 913 F.2d 469, 473 (7th Cir.1990). If no actual injury is established, then an award of nominal damages may be appropriate. *See id.* While perhaps less satisfying to plaintiffs, the award of nominal damages serves an important constitutional interest.

> By making the deprivation of [constitutional] rights actionable for nominal damages without proof of actual injury, the law recognizes the importance to organized society that those rights be scrupulously observed; but at the same time, it remains true to the principle that substantial damages should be awarded only to compensate actual injury or, in the case of exemplary or punitive damages, to deter or punish malicious deprivations of rights.

*Carey v. Piphus*, 435 U.S. 247, 266, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978).

■ The district court concluded that the government failed to demonstrate any exigent circumstances justifying the ex parte seizure of the real property. Because *Good* permits ex parte seizures of real property subject to civil forfeiture

---

2. Before the district court, claimants did not present evidence of damages regarding the seizure of their automobiles, bank account, or business assets. Thus, these items were not considered by the court. We, too, will only consider the home appliances and other furniture.

without notice and an opportunity to be heard before the seizure only if exigent circumstances exist, the lack of such circumstances and failure to provide adequate procedures is a violation of the Due Process Clause of the Fifth Amendment. *See Good,* 510 U.S. at 62, 114 S.Ct. 492. Neither side challenges the district court's findings on this point. Thus, it appears clear that the government violated claimants' constitutional rights to due process when it seized claimants' real property without prior notice or hearing and is liable for nominal damages to them.

■ The more complicated question concerns the district court's finding that claimants incurred no actual damages beyond the loss of rents due to the deprivation of their real property. Because the government paid claimants more than $91,-000 to compensate them for the loss of these rents, the district court found no need to award any compensatory damages. The government is responsible to those it deprives of real property without due process for the profits or rents accrued during the period of illegal seizure. *See West Side Bldg. Corp.,* 58 F.3d at 1193; *see also United States v. Marsh,* 105 F.3d 927, 931 (4th Cir.1997); *United States v. 51 Pieces of Real Property Roswell, N.M.,* 17 F.3d 1306, 1316 (10th Cir.1994), *appeal after remand,* 153 F.3d 729 (10th Cir.1998). The government met this responsibility in the settlement reached between it and claimants, which neither party appeals. Thus, to recover additional damages, claimants must demonstrate that the deprivation of this property resulted in additional actual injury to them that they would not have suffered in the absence of the illegal seizure. *See Smith,* 913 F.2d at 473.

On appeal, claimants offer scant reason for us to find that the district court erred when it adopted the magistrate judge's factual findings on this issue. Claimants assert that they should be reimbursed for the cost of utility bills, real estate taxes, and mortgage payments. The district

court, however, agreed with the magistrate judge's findings that by reimbursing claimants for the lost rents, the government made them whole. As the district court noted, when the government paid the agreed upon amount, claimants were returned to "the position in which they would have been had they possessed the property during the period between the seizure and the disposition of the adversarial hearing." If claimants had not had their property seized they would have had to pay the utility bills and taxes and been able to offset the cost of these necessary expenses with the money they received from tenants. When the government returned the rents, it made them whole. To require the government to compensate them for the ordinary cost of renting their land as well would create an unnecessary windfall for claimants.

Similar reasoning applies to the mortgage payments. As the district court pointed out, the mortgage payments constitute both an ordinary operating expense—payment of the interest—and a capital expense—payment going toward equity. The former expense should be assessed in a manner similar to that employed for analyzing the utility bills and taxes. While the latter expense may raise some concerns, we believe the district court's analysis to be essentially correct. If the government had not illegally seized the property without pre-deprivation process, claimants would still have had to make these payments and gained equity, which they would have lost at the subsequent proceeding. The fact that the deprivation happened in a constitutionally suspect manner does not alter this result. Holding the government liable for these losses would unjustly enrich claimants.

■ Claimants also contend that they should be compensated for the loss of the use of and right to control their land during the illegal seizure. As with the analysis of the payment of bills, taxes, and the mortgage, we find no reason, and claimants fail to present us with one, as to why

we should disturb the district court's conclusion on this issue. Claimants had contracted to rent the property before the government seized it. The seizure did not invalidate these contracts in which, as the district court properly noted, claimants had relinquished their right to use and enjoy the property. And, while it is true that they were unable to do with the property as they pleased, such as sell it or break the pre-existing contracts and form new ones or use the property themselves, claimants present no evidence of such a desire. This argument is far too speculative to form a proper basis for an award of compensatory damages.

Therefore, we AFFIRM the district court's conclusion that the constitutional due process requirements of notice and hearing of *Good* do not extend to claimants' personal property in this case; and AFFIRM as well its denial of compensatory damages and award of one dollar nominal damages.