UNITED STATES of America, Plaintiff-Appellee,

v.

1461 WEST 42ND STREET, HIALEAH, FLORIDA, Real property together with all improvements, fixtures and appurtenances thereon and therein, and all rent and profit derived therefrom, et al., Defendants,

Jose Angel Rivera, Argelia Rivera, Arsenio J. Falcon, Marta M. Falcon, Claimants-Appellants,

MR&F Enterprises, a partnership, Ridgewood Development Corporation, a Florida Corporation, Consolidated Claimants-Appellants.

No. 99-11130.

United States Court of Appeals,

Eleventh Circuit.

May 22, 2001.

Appeals from the United States District Court for the Southern District of Florida. (No. 91-01077-CV-EBD), Stephen T. Brown, Magistrate Judge.

Before ANDERSON, Chief Judge, and CARNES and OAKES[*], Circuit Judges.

OAKES, Circuit Judge:

In a quite complicated procedural context, this appeal deals with the considerations that ensue when real property that the government has seized in civil forfeiture proceedings is foreclosed by the property's mortgagee so that when it is time to return the property, after dismissal of the forfeiture action, the property, by virtue of the foreclosure, can no longer be returned. We are presented here with the task of tailoring an appropriate remedy under such circumstances when due process was violated pursuant to *United States v. James Daniel Good, Real Property,* 510 U.S. 43, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993).

*BACKGROUND*

This appeal arises from an *in rem* action against two rental apartment buildings identified respectively as Certain Real Property Known as and Located at 1461 West 42nd Street and 8500 N.W. 8th St., Miami, Florida ("Property # 2") and Certain Real Property Known as and Located at 8401-8425 N.W. 8th St., Miami, Florida ("Property # 4") (together, the "Properties"). Property # 2 was titled by way of a warranty deed in the name of Ridgewood Development Corp. ("Ridgewood"), and Property # 4 was titled by way of a quitclaim deed in the name of MR&F Enterprises, a partnership ("MR&F") (together, "claimants"). Each of the Properties consisted of 80 rental units, was valued at approximately $3 million, and carried a mortgage

---

[*]Honorable James L. Oakes, U.S. Circuit Judge for the Second Circuit, sitting by designation.

of approximately $2.8 million.

On May 16, 1991, the government secured an *ex parte* warrant and protective order under 21 U.S.C. §§ 853(e) and (f) authorizing the seizure of the Properties in anticipation of criminal forfeiture in connection with the drug-trafficking indictment of Augusto Falcon and Salvadore Magluta, who are relatives of the claimants. The protective order prohibited the encumbrance, sale or destruction of the Properties and required all rents to be paid to the U.S. Marshal as custodian pending final disposition of the criminal case. On February 16, 1996, Augusto Falcon and Salvadore Magluta were acquitted of the criminal charges against them.[1]

On May 23, 1991, the government also instituted civil forfeiture proceedings *in rem* against the Properties pursuant to 21 U.S.C. § 881(a)(6) on the allegation that the Properties represented proceeds of the drug-trafficking activities of Falcon and Magluta.[2] The government filed notices of *lis pendens* on the same day and subsequently seized the Properties pursuant to warrants of arrest *in rem* issued by the district court.

After seizing the Properties, the government installed its own property management firm to run and manage the rental buildings. Despite collecting rents beginning in June 1991, the government allegedly refused to make any mortgage payments on the Properties to the secured lender, Citicorp Savings of Florida ("Citibank").

On June 21, 1991, the loans were declared in default by reason of non-payment, and in September 1991, Citibank accelerated payment and initiated state foreclosure proceedings. On September 24, 1991, Ridgewood and MR&F filed a motion to compel the government to make mortgage payments on the seized Properties. On November 5, 1991, Citibank filed a similar motion to compel the government to pay all rents, profits and revenues from the Properties toward the outstanding mortgages.

Soon thereafter, the United States and Citibank entered into a joint stipulation, approved by the district court on December 18, 1991, which: (1) recognized Citibank's status as an innocent lienholder; (2) agreed to seek a joint interlocutory sale of the Properties; (3) agreed to drop the United States as a defendant

---

[1] The government asks us, and we agree, to take judicial notice of the fact, for whatever bearing it may have, that the foreperson of the acquitting jury was prosecuted for taking a cash bribe from individuals acting on behalf of the Falcon-Magluta organization and received a sentence of 210 months' term imprisonment. In August 1999, Falcon and Magluta were re-indicted on criminal charges stemming from their criminal trial.

[2] This action originally involved five defendant properties. The government's second amended complaint, dated September 23, 1991, charged sixteen total properties.

in Citibank's foreclosure action;  and (4) required the United States to apply all rents and profits collected from the Properties toward the outstanding mortgages, less expenses of seizure, custody and maintenance. Ridgewood's and MR&F's joint motion to vacate the stipulation was denied.

On January 14, 1993, the United States and Citibank petitioned the court for an order confirming the sale of the Properties.  Despite the court's confirmation, the Properties were not immediately sold, and on October 6, 1993, Citibank purchased them at a Sheriff's sale without objection from the government.

On December 13, 1993, the Supreme Court issued its opinion in *United States v. James Daniel Good Real Property,* 510 U.S. 43, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993), which held that the Fifth Amendment Due Process Clause requires the government to provide notice and a meaningful opportunity to be heard to owners of real property that is seized under civil forfeiture, absent exigent circumstances.  Thereafter, the government sought to dismiss the civil forfeiture action and to attain a certificate of reasonable cause pursuant to 28 U.S.C. § 2465.[3]  On June 10, 1995, the district court granted the dismissal, but conditioned it upon:  (1) the government's paying Citibank's expenses;  (2) the magistrate judge's determination of whether any other claimants were entitled to fees or costs;  and (3) Citibank's continued receipt of the net income from the Properties.  The district court granted the government's request for a certificate of reasonable cause on April 7, 1997.

After the government dismissed the civil forfeiture action, claimants filed a motion under *Good* for damages and reimbursement for the illegal seizure of the Properties.  On February 20, 1998, the district court, Brown, *Magistrate Judge,* issued a memorandum order finding that the United States was responsible for rents and profits, as well as loss of use damages, if any, of which the claimants were deprived during the illegal seizure period, and ordered an evidentiary hearing to determine the amount of damages.  *See United States v. 1461 West 42nd St., Miami, Fla.,* 998 F.Supp. 1438 (S.D.Fla.1998).

Upon reconsideration, on April 21, 1998, the district court rejected its prior ruling, which had awarded claimants damages for loss of use, as barred by sovereign immunity, and held that only a

---

[3]Section 2465 provides:

> Upon the entry of judgment for the claimant in any proceeding to condemn or forfeit property seized under any Act of Congress, such property shall be returned forthwith to the claimant or his agent;  but if it appears that there was reasonable cause for the seizure, the court shall cause a proper certificate thereof to be entered and the claimant shall not, in such case, be entitled to costs, nor shall the person who made the seizure, nor the prosecutor, be liable to suit or judgment on account of such suit or prosecution.

disgorgement of property via the return of rents and profits was an acceptable remedy under *Good.* On March 10, 1999, the district court issued a damages order awarding Ridgewood and MR&F damages for rents and profits less operating expenses and mortgage payments, ultimately totaling $265,252.99 and $252,903.93, respectively. This appeal followed.

*DISCUSSION*

Generally, civil forfeiture involves the forfeiture of real or personal property to the state when that property is found to be linked to the violation of the state's laws. Criminal forfeiture and civil forfeiture are distinct doctrines. Criminal forfeiture occurs in criminal court and comes into play only after the court has found the defendant guilty, though seizure does occur beforehand under the federal system. In contrast, civil forfeiture is an *in rem* action, unrelated to the guilt or innocence of the property owners. Criminal forfeiture is understood to be punitive insofar as it is intricately tied to the defendant's criminal proceeding, whereas civil forfeiture is understood to be remedial insofar as it "punishes" only the *res* itself. *See generally United States v. Ursery,* 518 U.S. 267, 274-78, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996) (discussing difference between civil and criminal forfeiture in context of Double Jeopardy Clause).

Claimants argue that the government indisputably violated the Fifth Amendment Due Process Clause under *Good.* They also claim that the government wrongly permitted the Properties to be subject to foreclosure, levy and loss of record title, and that the district court was required to order the return of the buildings and to construct a remedy for the constitutional violation tailored to the injury. They claim damages, including: (1) the loss of more than $4,305,000 of net operating income, which included mortgage payments; (2) the loss of the use and enjoyment of the Properties during the pendency of the trial; and (3) the loss of record title. Moreover, claimants argue that all sums returned should have included interest. The bottom line of claimants' argument is that whether in the form of a return of the value of the Properties or in the form of damages, they are entitled to have their injury redressed by the district court. Independent of that, claimants argue that the return of the Properties, or their money equivalent, is statutorily required under 28 U.S.C. § 2465.

The government argues, on the other hand, that the district court committed no reversible error by subtracting legitimate mortgage and operating expenses from returnable rents and proceeds or by denying loss of use and enjoyment damages pursuant to sovereign immunity. The government additionally maintains that, as an adversary, it had no duty to claimants, who lost title to the Properties on their own doing, and that

§ 2465 does not permit of claimants' relief.

We note at the outset that we review *de novo* a district court's fashioning of remedies for violations under *Good. See United States v. 47 W. 644 Route 38, Maple Park, Ill.,* 190 F.3d 781, 782 (7th Cir.1999). Similarly, we review a sovereign's immunity from suit *de novo. See Tamiami Partners, Ltd. v. Miccosukee Tribe,* 177 F.3d 1212, 1224 (11th Cir.1999).

*A).     United States v. James Daniel Good*

In *United States v. James Daniel Good Real Property,* the Supreme Court declared for the first time that in the context of civil forfeiture, the Due Process Clause of the Fifth Amendment requires the government to provide the owner of real property notice and a meaningful opportunity to be heard before it seizes property, absent a showing of exigent circumstances. *See* 510 U.S. at 59, 114 S.Ct. 492.

We note that *Good* applies retroactively to this case because the government did not dismiss its civil forfeiture action against defendant Properties until after *Good* was decided. *See Harper v. Virginia Dep't of Taxation,* 509 U.S. 86, 96-99, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993) (holding that new rules of law apply to pending civil cases on direct appeal regardless of whether events predate announcement of rule); *United States v. 2751 Peyton Woods Trail, S.W., Atlanta, Fulton County, Ga.,* 66 F.3d 1164, 1166 n. 2 (11th Cir.1995) (applying *Good* retroactively); *see also United States v. 20832 Big Rock Drive, Malibu, Cal.,* 51 F.3d 1402, 1405-6 (9th Cir.1995) (same). Applying *Good* to the facts here, we find that the government did not provide claimants with a notice and hearing prior to seizing the Properties nor did it allege or establish the existence of exigent circumstances.[4]

Although the *Good* Court announced a new constitutional rule, it declined to carve a remedy for violations. Hence, the onus of tailoring remedies for *Good* violations has fallen to the courts. This Court recently addressed the issue of remedies in *United States v. 408 Peyton Road, S.W., Atlanta, Fulton County, Ga.,* 162 F.3d 644 (11th Cir.1998) (en banc), holding that:

> [W]hen the Government fails to provide predeprivation notice and a hearing, but the property is found to be subject to forfeiture after the process due has been afforded, the proper remedy for a seizure in violation of the Fifth Amendment Due Process Clause is the return of any rents received

---

[4]The government questions *Good*'s applicability to this case on the reasoning that it first seized the Properties pursuant to criminal warrants and protective orders. Once the government seized the Properties under civil forfeiture, however, any protections retroactively afforded under *Good* kicked in to protect claimants insofar as the civil forfeiture was concerned. Moreover, because the government did not prevail in the criminal action, the Properties were never criminally forfeited; even were *Good* inapplicable, the government was probably under an initial obligation to return the Properties or to repay the rents anyway.

or other proceeds realized from the property during the period of illegal seizure.

*Id.* at 652 (footnote omitted).[5]

In *408 Peyton Road,* the Court was not presented with an opportunity to define the contours of the remedy it set out.[6] *See id.* We now address the meaning of "rents received or other proceeds realized."

i.      *Mortgage Payments*

The district court formulated "rents and proceeds" as the sum of all rents received during the illegal seizure period less operating expenses, such as repairs and mortgage payments, but including "wasted" expenses that would not have been incurred "but for" the illegal seizure, such as rental commissions and property management fees.

Claimants' principal contention is that the district court erred by subtracting mortgage payments from rents and proceeds. They argue that because they ultimately lost legal title to the Properties through state foreclosure, the mortgage payments that the government made to Citibank were for all intents and purposes "wasted." Thus, claimants argue, the district court should have treated these payments as it treated wasted property management fees from which claimants never benefitted, that is, it should not have subtracted them from net returnable rents and proceeds. Claimants ask us to carve a remedy directly under *Good* that would

---

[5]This conclusion is consistent with the view of the majority of circuits that have considered the issue. *See, e.g., United States v. Marsh,* 105 F.3d 927, 931 (4th Cir.1997); *United States v. All Assets and Equip. of West Side Building Corp.,* 58 F.3d 1181, 1193 (7th Cir.1995); *20832 Big Rock Drive,* 51 F.3d at 1406; *United States v. 51 Pieces of Real Property,* 17 F.3d 1306, 1315-16 (10th Cir.1994); *United States v. One 1989 23 Foot, Wellcraft, Motor Vessel,* 910 F.Supp. 46, 52 (D.P.R.1995), *aff'd,* No. 97-1220, 125 F.3d 842 (1st Cir. Sept. 30, 1997)(unpub.); *but see United States v. 9638 Chicago Heights, St. Louis, Mo.,* 27 F.3d 327, 330 (8th Cir.1994) (concluding that dismissal of forfeiture complaint was appropriate remedy for *Good* violation). Some courts have chosen to afford themselves the flexibility to carve remedies individually tailored to the circumstances of specific violations. *See, e.g., United States v. 6380 Little Canyon Road, El Dorado, Cal.,* 59 F.3d 974, 981 (9th Cir.1995) (holding that claimants may be entitled to damages for loss of use and enjoyment in addition to returned rents and profits); *United States v. 4492 South Livonia Road, Livonia, N.Y.,* 889 F.2d 1258, 1265 (2d Cir.1989) (suppression of evidence that government may have obtained from an unlawful seizure may be appropriate remedy); *United States v. Property Identified as Lot Numbered 718,* 20 F.Supp.2d 27, 39 (D.D.C.1998) (noting that although remedy of dismissal is the minority view, under facts of the case, dismissal is the only solution that would afford claimant any meaningful relief).

[6]Claimants contend that *408 Peyton Road* is not controlling in this case. They differentiate their case on the basis that in *408 Peyton Road* the defendant property was ultimately found to be subject to forfeiture whereas, claimants assert, they prevailed in the forfeiture action. Even if we were to interpret so felicitously the government's voluntary dismissal of its forfeiture action, we believe that this is a distinction with no difference. A claimant's right to predeprivation notice and hearing does not hinge on the *outcome* of the *in rem* action. The due process rights announced in *Good* pertain to the rights of all claimants in forfeiture actions *at the point of seizure,* not the point of forfeiture. Therefore, we would be relatively diminishing these rights were we to make them turn on the ultimate "guilt" or "innocence" of the defendant property.

include such "wasted" mortgage payments.

The government, in contrast, points out that it made mortgage payments from the rental proceeds, as claimants had requested, in good faith and pursuant to a court-ratified agreement, and that those payments benefitted claimants by reducing their loan obligations. The government argues that if claimants lost legal title to the Properties, it was their own fault, since they remained contractually obligated to make mortgage payments on the loans. The government also insists that claimants, as mortgagors, were fully represented in the state foreclosure proceedings.

We agree with the district court that in constructing the meaning of rents and proceeds, it would be an "absurd construction" simply to return to the claimants all of the rents and proceeds collected by the government during the illegal seizure period without deducting any amounts that the government paid out in order to maintain the Properties. Furthermore, we agree that mortgage payments should be categorized as one such operating expense deductible from the total amount of returnable rents and proceeds.

While it is true that mortgage payments go toward building equity in property and thereby represent a capital expenditure, the payment of mortgage interest also represents a deductible normal operating expense. Presumably, had the Properties not been foreclosed upon, claimants would not be asking this court to deduct mortgage payments from their returnable rents and proceeds. This highlights the fact that claimants' primary grievance concerns their loss of equity from their loss of legal title to the Properties. While we may sympathize with claimants' loss, we are unable to address, let alone redress, it in the current action. Damages, if any, for loss of property may be appropriate in a separate action. Were we to allow claimants recovery of mortgage payments in this action, their possible recovery of damages in another action for the loss of the Properties would unjustifiably duplicate their remedies.

We find the Seventh Circuit's opinion in *United States v. All Assets and Equipment of West Side Building Corp.,* 188 F.3d 440 (7th Cir.1999) ("*All Assets II* "), instructive. There, in the only other case involving constructing a remedy under *Good* after the seized property was foreclosed upon and the civil forfeiture action dismissed, the government returned to the claimants rents minus additional expenses, including mortgage payments. The court held that:

> When the government returned the rents, it made [claimants] whole. To require the government to compensate them for the ordinary cost of renting their land as well would create an unnecessary windfall for claimants.
>
> Similar reasoning applies to the mortgage payments. As the district court pointed out, the mortgage payments constitute both an ordinary operating expense—payment of the interest—and a

capital expense—payment going toward equity. The former expense should be assessed in a manner similar to that employed for analyzing the utility bills and taxes. While the latter expense may raise some concerns, we believe the district court's analysis to be essentially correct. If the government had not illegally seized the property without pre-deprivation process, claimants would still have had to make these payments and gained equity, which they would have lost at the subsequent proceeding. The fact that the deprivation happened in a constitutionally suspect manner does not alter this result. Holding the government liable for these losses would unjustly enrich claimants.

*Id.* at 445.

The government would have us believe that claimants "can blame only themselves" for having lost title to the Properties and that, ultimately, they would have lost them anyway.[7] We are unwilling to engage in this kind of speculation. While it is true that claimants had an independent obligation to meet their mortgage obligations, it is also arguably true that, absent the seizure(s), they would have continued to meet them through rental income, apparently as they had done during the years prior to the seizure. Thus, we base our holding that claimants are not entitled to mortgage payments not on speculation about their ability to retain equity in the Properties but, rather, on the recognition that claimants have failed to launch their complaint against the government or Citibank under an appropriate cause of action.

ii.     *Loss of Use and Enjoyment*

Claimants argue that the district court erred in its reconsideration order by denying damages for the loss of use and enjoyment of the Properties, and they ask us to create such damages directly under *Good.*

The district court reasoned that any damages beyond the return of claimants' property would be barred by governmental immunity. The court differentiated the return of rents and profits from loss of use and enjoyment damages on the basis that the former represented "in essence, a return of a portion of the claimants' 'property' which was seized" whereas the latter represented consequential damages barred by governmental immunity. We agree with the district court's reasoning and hold that claimants are barred by governmental immunity from receiving damages for the loss of use and enjoyment of the Properties.[8]

---

[7]The government's argument that claimants' loans were in default prior to the time of seizure is unsupported. As the record bears out, the first payment default occurred on June 1, 1991, after seizure on May 17, 1991, and it was payment of interest earned for May 1991 that was due. Mortgage interest, as provided for by the loan documents, is paid in arrears.

[8]Even if claimants' claim were not barred by sovereign immunity, they would not have a claim for loss of use and enjoyment damages. Because the Properties were rental properties, claimants have no presumptive claim for such damages. *See All Assets II,* 188 F.3d at 445-46 (stating that, as rental properties, claimants had already contracted to relinquish use and enjoyment of lands and that record indicated no desire on claimants' part to break contracts for right to use and enjoy the land in other ways). Indeed, although the Supreme Court did not limit its holding in *Good* to personal residences, it did observe that an individual's "right to maintain control over his home, and to be free from governmental interference, is a private interest of historic and continuing importance." 510 U.S. at 53-54, 114 S.Ct.

Claimants' argument seems to conflate *Good* violations with takings law. A *Good* violation is a due process violation, not an unconstitutional taking of private property for public use for which just compensation is due. *See Owens v. United States,* No. 99-5021, 215 F.3d 1347 (Fed Cir. Aug. 6, 1999) (unpub.). In contrast to takings law, the government is immune, absent waiver, from suit for damages arising from due process violations under the Fifth Amendment. *See FDIC v. Meyer,* 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994); *United States v. Timmons,* 672 F.2d 1373, 1380 (11th Cir.1982); *see also Lane v. Pena,* 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996) (immunity can be waived only by unequivocal, express act of Congress). The return of rents and profits under *Good* is not barred by sovereign immunity because it does not represent consequential damages. Rather, it represents disgorgement of property held by the government during the illegal seizure period.

*iii.    Pre-Judgment Interest*

Claimants' request for an award of interest on all returnable rents and profits can also be disposed of under the doctrine of sovereign immunity, which precludes the government's liability for prejudgment interest. *See Library of Congress v. Shaw,* 478 U.S. 310, 314, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986) ("In the absence of express congressional consent to the award of interest separate from a general waiver of immunity to suit, the United States is immune from an interest award.").

It is true that the government may be liable for pre-judgment interest to the extent that it has earned interest on the seized *res.* In such cases, the government must disgorge its earnings along with the property at the time when the property is returned. *See United States v. $515,060.42,* 152 F.3d 491, 504 (6th Cir.1998) ("there is no issue of sovereign immunity because the Government is not being asked to pay interest, but to disgorge property that was not forfeited").

However, in this case, the government did not earn interest on the Properties during the illegal seizure period. Rather, it used the rental income to pay management and operating expenses, including mortgage payments to Citibank. There are no earnings to disgorge here. Therefore, we are barred by the doctrine of sovereign immunity from awarding claimants prejudgment interest on the returned rents and proceeds.

*iv.    Government's Duty of Care*

Claimants ask us to find that the government had a duty to take care of the Properties and to protect claimants' proprietary interests during the seizure period. Specifically, claimants argue that the government

---

492.

should have required reinstatement of the mortgages or a stay of the state foreclosure prosecution. We believe that if the government had any such duty of care which was violated in this case, an action for its breach was not properly brought before this court in this proceeding.

B).     *Return of Property Under 28 U.S.C. § 2465*

Claimants alternatively contend that they are entitled to an award of damages under 28 U.S.C. § 2465. We disagree.

Claimants ask us to read § 2465 as standing for the proposition that even where claimants are barred by a reasonable cause certificate from receiving costs, they are entitled to a return of the value of the property, if not a return of another piece of property of comparable value. However, claimants are unable to cite any case holding for this remarkable interpretation of § 2465.

As the court in *United States v. One (1) 1979 Cadillac Coupe De Ville,* 833 F.2d 994 (Fed.Cir.1987), stated:

> On its face, [§ 2465] requires only that ... "the property seized" shall be returned.... It does not say "the equivalent value of the property seized" shall be returned.... If Congress had intended the government not only to return the seized property but also to make the claimant whole for any depreciation in the value of the property during the period of government custody, it presumably would have so stated or indicated.

*Id.* at 998.

Additionally, claimant's preferred interpretation of § 2465 rides against the current of the statute's purpose, which is to insulate the government from, rather than broaden the government's exposure to, liability for costs or damages for initially reasonable but ultimately improvident seizures. *See United States v. $637,944.57,* 746 F.Supp. 1441, 1446 (D.Haw.1990) ("Clearly, Congress enacted 28 U.S.C. § 2465 for the important purpose of preventing the 'chilling effect' that liability for improvident seizures based on reasonable cause might have on the government."); *United States v. Tito Campanella Societa Di Navigazione,* 217 F.2d 751, 756 (4th Cir.1954) (purpose of § 2465 "is to protect against liability for costs or damages on account of the institution of [forfeiture] proceedings").

Moreover, even if we were to indulge claimants' interpretation, the doctrine of sovereign immunity would prevent suit for damages against the United States. The requirement that seized property "shall be returned forthwith to the claimant" cannot be interpreted as mandating compensation by the federal government for the damages sustained by the claimant as a result of the seizure. Such an interpretation would amount to the assessment of damages beyond the amount of monies received pursuant to the illegal seizure,

which would, absent waiver, trespass upon the government's sovereign immunity. *See FDIC v. Meyer,* 510 U.S. at 475, 114 S.Ct. 996; *United States v. Timmons,* 672 F.2d at 1380. Courts have generally prohibited consequential damages from the government for loss of value. *See, e.g., One (1) 1979 Cadillac Coupe De Ville,* 833 F.2d at 998-99 (reversing award of damages for depreciation and holding by virtue of doctrine of sovereign immunity government not liable for such consequential damages under § 2465); *United States v. $277,000,* 69 F.3d 1491, 1498 (9th Cir.1995) (holding that liability for depreciation would constitute consequential damages barred by sovereign immunity where government did not benefit from property that lost value during seizure period); *United States v. Silvers,* 932 F.Supp. 702, 705 (D.Md.1996) (finding that § 2465 does not permit depreciation costs). There was no waiver here; by bringing an *in rem* action, the government has not submitted to *in personam* jurisdiction or to a waiver of its sovereign immunity. *See One (1) 1979 Cadillac Coupe De Ville,* 833 F.2d at 999.

Of course, claims for damages may be brought under *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), but such claims are only cognizable when brought against federal officials individually.[9] At the same time, claims for equitable relief, such as the return of property or rents received from property during a constitutional violation, do not impinge upon sovereign immunity. *See generally Bowen v. Massachusetts,* 487 U.S. 879, 893, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988). Alternatively, relief for government torts may be attained under the Federal Torts Claims Act, 28 U.S.C. § 2671, which is a cause of action that is not before us and which may be precluded under 28 U.S.C. § 2675 (requiring presentation of the claim to the federal agency involved) or may be barred by the statute of limitations. However, these are not avenues that claimants chose to pursue. In short, in this action, claimants are without further remedy.

*CONCLUSION*

For the foregoing reasons, we hold that the district court properly concluded in this case that appellants were entitled only to a return of net rental proceeds after the court had subtracted operating expenses including mortgage payment amounts, repairs and utility expenses.

AFFIRMED.

---

[9]Notably, in this case, *Bivens* actions were brought but later voluntarily dismissed by appellants.