In the
United States Court of Appeals
For the Seventh Circuit

No. 99-4070

Leonard Guzell,

Plaintiff-Appellant,

v.

R. Hiller and J. Gawlik,

Defendants-Appellees.


Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 3740--James H. Alesia, Judge.


Argued April 19, 2000--Decided August 7, 2000


 Before Posner, Coffey, and Easterbrook, Circuit
Judges.

 Posner, Circuit Judge.  The plaintiff appeals
from the dismissal under Fed. R. Civ. P. 12(b)(6)
of his Fourth Amendment false-arrest suit against
two Chicago police officers. 42 U.S.C. sec. 1983.
According to the complaint, back in 1988 Guzell,
a travel agent, sold a round-trip Chicago-to-
Warsaw airline ticket to Agniezka Bacik. "In
order to facilitate the travel arrangements and
as security for payment," we read in the
complaint, Bacik left her passport with Guzell.
The ticket was "processed," whatever exactly that
means (probably that it was issued), but Bacik
refused to pay for it, so Guzell did not return
her passport. (Whether she was able to use the
ticket without her passport is unclear--maybe she
had another passport, issued by another country.)
Eleven years later Bacik appeared in Guzell's
office and demanded her passport back. He
refused, because she had never paid for the
ticket and was unwilling to do so now. She
complained to the police, who went to Guzell's
office and told him to give her back her
passport. He refused, explaining that he was
holding the passport as part of a business
dispute and that she had a civil remedy. The
police arrested him for misdemeanor theft. He was
prosecuted, but the case against him was
dismissed. Whether Bacik ever got her passport
back, and why she wanted it back since it almost

certainly had expired, are among the unresolved mysteries of this case. There is no argument that the police should have known that prosecution would be barred by the statute of limitations, since the statute probably did not begin to run until Bacik's demand for the return of the passport, which she had left voluntarily with Guzell eleven years before, was refused. Cf. Owens-Illinois, Inc. v. Candle Man, Inc., 279 N.E.2d 774 (Ill. App. 1972); Hobson's Truck Sales, Inc. v. Carroll Trucking, Inc., 276 N.E.2d 89, 91 (Ill. App. 1971).

Guzell attached to his complaint the police report of the arrest, minus one page, which the defendants have included in their brief. The record also contains a complaint to the police signed by Bacik. By attaching pages from the police report to his complaint, Guzell made them a part of the complaint "for all purposes." Fed. R. Civ. P. 10(c). But this does not mean that he necessarily vouched for all the facts set forth in them, Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend, 163 F.3d 449, 455 (7th Cir. 1998); Gant v. Wallingford Board of Education, 69 F.3d 669, 674 (2d Cir. 1995), thus setting the stage for an argument that he had pleaded himself out of court. Ogden Martin Systems of Indianapolis, Inc. v. Whiting Corp., 179 F.3d 523, 529 (7th Cir. 1999); Thomas v. Farley, 31 F.3d 557 (7th Cir. 1994); Early v. Bankers Life & Casualty Co., 959 F.2d 75, 79 (7th Cir. 1992). A plaintiff in a libel suit who attached the allegedly libelous article to his complaint would obviously not be vouching for the truth of the libelous assertions in the article. Gant v. Wallingford Board of Education, supra, 69 F.3d at 674. The plaintiff's purpose in attaching an exhibit to his complaint determines what assertions if any in the exhibit are facts that the plaintiff has incorporated into the complaint. We need not pursue the issue here, however, as Guzell does not appear to be contesting the accuracy of the police report.

Nor do we understand him to be contesting the authenticity, as opposed to the accuracy, of Bacik's signed complaint to the police. Its accuracy is in any event of limited relevance to the question whether the police had probable cause to arrest Guzell. Police are entitled to base an arrest on a citizen complaint, whether of a victim (as here) or a nonvictim witness, without investigating the truthfulness of the complaint, unless--this turns out to be an important qualification--they have reason to believe it's fishy. Gramenos v. Jewel Cos., 797 F.2d 432, 439-40 (7th Cir. 1986); Rodgers v. Lincoln Towing Service, Inc., 771 F.2d 194, 200 (7th Cir. 1985); McKinney v. George, 726 F.2d

1183, 1187 (7th Cir. 1984); Butler v. Goldblatt Bros., Inc., 589 F.2d 323, 325-26 (7th Cir. 1978); Lee v. Sandberg, 136 F.3d 94, 103 (2d Cir. 1997). So we can treat the police report plus Bacik's complaint as the factual record upon which to base a judgment of whether the police had probable cause, or at least a reasonable basis for thinking they had probable cause, to arrest Guzell.

Bacik's complaint, though much trumpeted by the defendants, has limited relevance to the question whether they were acting reasonably in arresting Guzell. Obviously written by the police though signed by her, it merely recites the statutory elements of theft--that Guzell "knowingly obtained control over property of Bacik [namely her passport] . . . intending to deprive [her] permanently of the use of the property." See 720 ILCS 5/16-1. Since it is obvious and indeed conceded that Bacik told the police more than this, the reasonableness of their action cannot be predicated on the written complaint alone. There is no rule that the police can make an arrest whenever they have a scrap of paper that contains statements which if true (even though they may have been taken out of context) establish probable cause for an arrest. Otherwise they could have arrested Guzell on the basis of the complaint that we have quoted plus a statement by Bacik that he had obtained control over her passport by using a giant magnet to draw it out of her safe deposit box. Police must act reasonably on the basis of what they know, and if what they know is more than an isolated sentence in a police report they can't close their eyes to the additional information.

Bacik's complaint is, moreover, contradicted by the defendants' own argument that the passport was and is the property of the United States and thus not, as her complaint states, "property of Bacik." The argument founders immediately on the fact that there is nothing in the record to indicate that it is a U.S. passport; it may be a Polish passport, and we have no idea whether Poland regards the holder of its passports as having a property interest in them. No doubt Poland--no doubt every country--places more restrictions on a person's use of his passport than on his use of his toothbrush, but this does not mean that the passport is not, at least for many purposes, the person's property.

It may seem surprising that the defendants would argue that the passport was not Bacik's property, since if they reasonably believed that it was, whether or not it really was, that would, one might think, give them probable cause to arrest Guzell for withholding it. The police could not

be faulted for lacking a clear idea of the property rights in passports, an esoteric issue. The problem, and the motivation for this line of argument, is that to establish probable cause the defendants must show they were reasonable in thinking that Guzell wasn't merely trying to enforce a security interest in the passport, but had really stolen the passport. They deny that the passport was Bacik's property (despite what she told them) in order to show that Guzell couldn't have had a security interest in it. This is another misstep. Under the law of theft, all that is required to demonstrate that he didn't steal the passport is that he had a bona fide belief that he had a valid security interest in it which he could lawfully enforce by holding on to the passport until she paid for the ticket. Phelps v. People, 55 Ill. 334 (1870); People v. Baum, 579 N.E.2d 374, 375 (Ill. App. 1991) ("a bona fide belief, even though mistakenly held, that one has a right or claim to another's property, can negate an intent to permanently deprive the owner of his property"); People v. Baddeley, 245 N.E.2d 593, 595 (Ill. App. 1969). The LaFave and Scott treatise treats as unproblematic the defense of good faith when property "is taken for security, rather than in satisfaction of, the debt or claim." 2 Wayne R. LaFave and Austin W. Scott, Jr., Substantive Criminal Law sec. 8.5, p. 363 (1986). In any event, one can have (and not just believe, mistakenly but honestly, that one has) a valid security interest in property that is not owned by the grantor of the interest. Midwest Decks, Inc. v. Butler & Baretz Acquisitions, Inc., 649 N.E.2d 511, 516 (Ill. App. 1995); In re Pubs, Inc. of Champaign, 618 F.2d 432, 436 (7th Cir. 1980); Kunkel v. Sprague National Bank, 128 F.3d 636, 641 (8th Cir. 1997); First National Bank v. Avondale Mills Bevelle Employees Federal Credit Union, 967 F.2d 556, 559 (11th Cir. 1992); 2 James J. White & Robert S. Summers, Uniform Commercial Code sec. 24-6, pp. 322-23 (3d ed. 1988). Thus a tenant can borrow against his leasehold, id., p. 323; In re Fullop, 6 F.3d 422, 425 (7th Cir. 1993), even though by definition he does not own the leased property.

 The defendants' further argument, for which no authority is offered, that U.S. law forbids the granting of a security interest in a passport also assumes without any basis in the scanty record that Bacik's passport is a U.S. passport. What we do know, recurring to the restrictions that countries place on the use of the passports they issue, is that Guzell, should he have tried to "foreclose" his alleged security interest, could not have sold Bacik's passport to someone else to use, or have used it himself. 18 U.S.C. sec. 1544. But it does not follow that Bacik

could not have pledged the passport to him as security for his advancing her the money for the airline ticket. Secured credit has been said to originate in the practice of giving hostages to secure one's promises, Oliver Wendell Holmes, Jr., The Common Law 247-51, 260 (1881), since a thing as well as a person can be a hostage. We do not permit the use of human beings as pledges any more and so if Bacik had given Guzell her child to hold until she paid for her ticket he could not refuse to return it to her even if she refused to pay for the ticket. But we are given no reason to think that the law treats a passport, especially a foreign passport, similarly, though we can find no cases on the point.

Since the defendants have failed to establish that Guzell could not possibly have had a security interest in the passport, a fortiori they have failed to establish that he could not have had a bona fide belief that he had such an interest. Guzell could no more be charged with knowledge of the intricacies of secured transactions than the police could be. But we reject Guzell's argument that because he did not intend to keep the passport "permanently," but only until Bacik paid him for the ticket, he could not be guilty of theft under Illinois law. There are two fallacies in this argument. The first is its failure to recognize that under Illinois law, extortion, which includes holding someone's property for ransom, is treated as a form of theft. United States v. Bedell, 981 F.2d 915 (7th Cir. 1992); cf. United States v. Lallemand, 989 F.2d 936, 939 (7th Cir. 1993). Second and related but more fundamental, the word "permanently" when it appears in statutory or judicial definitions of theft is not to be taken literally. Otherwise if Guzell had taken Bacik's diamond necklace and told her he would see to it that it was returned to her heirs in the year 3000, he would not be guilty of theft. What "permanently" means in this context is "either permanently or for an unreasonable length of time, or [that the defendant] intended to use it in such a way that the owner will probably be deprived of his property." 2 LaFave and Scott, supra, sec. 8.5, p. 357. The defendant may originally not have intended to keep the property "permanently" (in this extended sense), but if upon demand for its return he refuses to give it up an inference of such an intent can arise; the refusal then marks the point at which his holding of the property went over into theft. People v. Block, 540 N.E.2d 512, 516-17 (Ill. App. 1989); cf. People v. Davis, 523 N.E.2d 165, 167 (Ill. App. 1988). This is why, as we noted earlier, the statute of limitations probably didn't start to run until Guzell rejected Bacik's demand for the

return of the passport.

 What the question in this case comes down to, therefore, is whether the police had reason to believe that Guzell was treating the passport as if he owned it. The answer is yes if they reasonably believed that he had no color of right to withhold possession of the passport from Bacik. And so let us turn to the police report, the accuracy of which, as we said, Guzell does not contest. The report recites that Bacik had told the police that Guzell had taken her passport in order "to perform a service thru his travel agency" and then when she tried to recover it he told her "'give me 350 and it's yours,'" though "no service was performed." The report goes on to say that the police went to Guzell and told him to return the passport but that he refused, saying he would not return it until "she paid a renewal fee"--which makes absolutely no sense. Although the passport would have expired (at least if it was a U.S. passport), obviously Guzell would not have expected Bacik to pay him the renewal fee, since he could not renew her passport. Before arresting him, the police "attempted to explain he could not hold the passport for payment (that being a civil matter)." The police report also and inconsistently states that he told them he had refused to return the passport because she owed him "money for services rendered" and that the police had responded that "in order to recover money for services was a civil matter and he could not hold the passport for payment."
 Had Bacik denied that she had any dispute with Guzell over payment for past services, the police could have chosen to believe her (although such a denial, unsupported by any documentary evidence, about what had happened eleven years earlier might warrant a high degree of skepticism) and disbelieve Guzell. That possibility is implicit in the rule that allows the police to arrest on a citizen complaint without investigating its truthfulness. And apparently Bacik did tell them that Guzell had never performed any service for her that would justify his keeping her passport until she paid him $350. But she did not deny that there was a dispute over this. Or if she did, it nevertheless appears from the police report that the police accepted Guzell's contention that he had a dispute with Bacik, and specifically that he thought she owed him money (there is no contention that the police thought the debt barred by the statute of limitations) and that he was holding the passport as security for the payment of that money. We have not been told on what basis the police could have determined that Guzell knew, or was reckless in failing to learn, that he had no right to treat the passport as security. If they reasonably

believed that a passport is just like a child and so cannot be a pledge, and that this is so clear that Guzell was unlikely to have a bona fide belief to the contrary, then they may have had probable cause to arrest him after all. But of this there is no indication in the record, which in its present almost naked state is entirely consistent with the defendants' having no ground for doubting Guzell's good faith in claiming a security interest in Bacik's passport. A fuller development of the facts may cast them in a quite different light, and perhaps provide a basis for a defense of immunity if not for a finding of probable cause; but the dismissal of the complaint on motion under Rule 12(b)(6) was premature.

Reversed and Remanded.