In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 06-2170

RICHARD REYNOLDS,

*Plaintiff-Appellant,*

v.

DAWN JAMISON and CHRISTOPHER DARR,

*Defendants-Appellees.*

———————

Appeal from the United States District Court
for the Central District of Illinois.
No. 05 C 2138—**Harold A. Baker**, *Judge.*

———————

ARGUED NOVEMBER 29, 2006—DECIDED JUNE 8, 2007

———————

Before BAUER, CUDAHY, and ROVNER, *Circuit Judges.*

CUDAHY, *Circuit Judge.* Richard Reynolds was arrested on two occasions—July 12, 2004 and November 28, 2004—by the defendant, Officer Christopher Darr. The first arrest concerned threatening phone calls that Reynolds made to his ex-girlfriend, Dawn Jamison, the other defendant in the present case. This arrest ultimately led to a protective order entered against Reynolds, and the second arrest concerned an alleged violation of this order. In June 2005, the plaintiff brought a 42 U.S.C. § 1983 lawsuit against both Officer Darr and Jamison, claiming that the defendants conspired to violate his right to be free from unreasonable seizure by arresting him

without probable cause. Officer Darr filed a motion to stay discovery, along with a motion for summary judgment on the basis of qualified immunity. Jamison also filed a motion for summary judgment. The district court held that discovery would not lead to any triable issue with respect to the July 12, 2004 arrest, but allowed Reynolds leave to conduct limited discovery to determine if Officer Darr had probable cause to arrest him on November 28, 2004. In a subsequent opinion, the court granted both Officer Darr and Jamison's motions for summary judgment. Reynolds now appeals. We affirm.

## I.  Background

Reynolds and Jamison had been in a romantic relationship, which ended sometime in 2004. On July 12, 2004, Reynolds contacted Urbana Animal Control about a dispute with Jamison over a dog in Jamison's possession, which Reynolds claimed he owned. An animal control officer along with Officer Darr responded to the call and spoke with Reynolds. Darr then contacted Jamison at her workplace to discuss the dispute over the dog. In the course of that conversation, Jamison revealed that Reynolds had contacted her at least five times that day to harass her. On one of those occasions, Jamison claims that she put the telephone on speaker phone so that her co-workers could hear the conversation. Jamison also told Darr that during one phone call, Reynolds threatened to harm Jamison's son and dog. Darr continued the investigation at Jamison's office where she showed Darr a computer log recording sixty-one phone calls from Reynolds and mentioned that some of the later calls were threatening in nature. Darr also claims that he listened to several threatening voicemails Jamison had saved and spoke with Jamison's co-workers regarding the threatening calls. Later that same day, after reviewing the information he

had gathered, Darr questioned Reynolds and arrested him for telephone harassment.[1] After Reynolds' arrest, Jamison brought Darr a CD that contained 72 voicemails left by Reynolds at her work.

The next day, July 13, 2004, the Champaign County Circuit Court granted Jamison an Order of Protection against Reynolds. The Order of Protection provided:

---

[1] Under Illinois law, harassment by telephone is defined as:

[U]se of telephone communication for any of the following purposes:

(1) Making any comment, request, suggestion or proposal which is obscene, lewd, lascivious, filthy or indecent with an intent to offend; or

(2) Making a telephone call, whether or not conversation ensues, with intent to abuse, threaten or harass any person at the called number; or

(3) Making or causing the telephone of another repeatedly to ring, with intent to harass any person at the called number; or

(4) Making repeated telephone calls, during which conversation ensues, solely to harass any person at the called number; or

(4.1) Making a telephone call or knowingly inducing a person to make a telephone call for the purpose of harassing another person who is under 13 years of age, regardless of whether the person under 13 years of age consents to the harassment, if the defendant is at least 16 years of age at the time of the commission of the offense; or

(5) Knowingly permitting any telephone under one's control to be used for any of the purposes mentioned herein.

720 Ill. Comp. Stat. 135/1-1.

> Respondent is further ordered and enjoined as follows: No contact whatsoever. No contact by phone, cell phone, mail, email, fax, or third person with protected persons and must remain 500 ft away from protected persons and places at all times. When Respondent visits his relatives on East Pennsylvania, respondent must use Philo Road entrance and exit only and must remain 500 feet away from protected persons and places at all times.

(Appellant Brief at 7.) Reynolds ultimately pleaded guilty to the offense of harassment by telephone for making a threatening call between May 2004 and July 2004.

On November 28, 2004, Reynolds attended a gathering at his grandparents' home, which is located on East Pennsylvania, near Jamison's home. According to the Metropolitan Computer-aided Dispatch service (METCAD) records, Jamison called 911/METCAD to report that Reynolds was violating an order of protection. Jamison alleged that she observed Reynolds drive back and forth in front of her home several times, aim the truck at her son's bedroom and rev the engine.

After the police dispatcher received Jamison's call, Sergeant Dan Morgan contacted Officer Darr and notified him of the domestic dispute between Jamison and Reynolds. Morgan asked Darr to accompany him, in a separate vehicle, to investigate the alleged violation of an order of protection. After the officers had been dispatched, Jamison called 911 again to report that Reynolds was leaving the vicinity of her house and might be heading home or to his parents' house. Upon receiving this dispatch, Sergeant Morgan and Officer Darr split up to try to locate Reynolds. Darr did not speak with Jamison that night.

While en route, Officer Darr accessed METCAD to retrieve the details of the order of protection. These details

noted no exception for visits to Reynolds' grandparents' house on East Pennsylvania. When Darr ultimately located Reynolds' vehicle and pulled him over, he also checked the Law Enforcement Agency Database System (LEADS) which verified the order of protection against Reynolds.[2] Darr's onboard computer showed that Reynolds was prohibited from coming within 500 feet of Jamison's house—1308 East Pennsylvania Avenue—but did not include any exception concerning Reynolds' grandparents' house. When Darr questioned Reynolds, he confirmed that he had been visiting his grandparents' house, which Darr learned—either from Reynolds himself, the dispatch or from Sergeant Morgan—was located at 1311 East Pennsylvania Avenue. From his familiarity with the area and his experience as a police officer, Darr knew that Reynolds' grandparents house was within 500 feet of Jamison's home. Reynolds explained to Darr that there was an exception to the order of protection and requested that he or someone else be allowed to retrieve his copy of the order. At this point, Darr also allegedly checked with the Champaign County Jail Records Division, which maintains copies of orders of protection that are entered by Champaign County courts, but again did not find any exception to the order of protection. Officer Darr then placed Reynolds under arrest for violating the protection order. Reynolds spent the night in jail, but the charge was dismissed the next day.

On June 13, 2005, Reynolds filed the present lawsuit against Darr and Jamison pursuant to 42 U.S.C. § 1983, alleging that the defendants conspired to violate his Fourth Amendment right to be free from unreasonable

---

[2] The LEADS/SOS system is a system regularly relied upon by police officers to provide information such as whether there is an order of protection involving a particular individual.

seizure when he was arrested on both July 12, 2004 and November 28, 2004. The defendants filed separate motions for summary judgment. Darr argued that he was entitled to qualified immunity. Officer Darr also filed a motion to stay discovery arguing that discovery was unnecessary because his motion for summary judgment was based, in part, on qualified immunity. The district court denied Darr's motion to stay discovery, and allowed for limited discovery as to two issues: "whether Darr, while on duty as an Urbana police officer, responded to a police dispatch that resulted in Reynolds' November 28, 2004 arrest, and whether Darr acted prudently during the arrest by checking his onboard computer for the terms of the order of protection." *Reynolds v. Jamison* (*Reynolds I*), No. 05-2138, slip op. at 5-6 (C.D. Ill. Jan. 24, 2006). On March 30, 2006, the district court granted the defendants' motions for summary judgment and disposed of all claims. *Reynolds v. Jamison* (*Reynolds II*), No. 05-2138, slip op. at 3 (C. D. Ill. Mar. 30, 2006). Reynolds appeals both the district court's decision to limit discovery and its grant of summary judgment.

## II.  Discussion

### A.  Discovery Order

We review a district court's decision to limit discovery for abuse of discretion. *Vallone v. CNA Fin. Corp.*, 375 F.3d 623, 629 (7th Cir. 2004). "A court does not abuse its discretion unless one or more of the following circumstances is present: (1) the record contains no evidence upon which the court could have rationally based its decision; (2) the decision is based on an erroneous conclusion of law; (3) the decision is based on clearly erroneous factual findings; or (4) the decision clearly appears arbitrary." *Id.* (internal quotations marks omitted). The complaining party must also establish that the district court's decision resulted in

"actual and substantial prejudice." *Stagman v. Ryan*, 176 F.3d 986, 994 (7th Cir. 1999).

In the present case, the district court examined the need for discovery in light of Officer Darr's motion for summary judgment. Noting the burden placed on the party moving for summary judgment, the court held that any discovery should relate to disputed *material* facts concerning Reynolds' § 1983 claim, namely any material facts concerning whether Darr had probable cause to arrest Reynolds in July or in November.

### 1. The July 12, 2004 Arrest

For the July 12, 2004 arrest, the district court determined that there were no genuine issues of material fact relevant to the question whether Darr had probable cause to arrest Reynolds. In brief, whether a law enforcement officer had probable cause depends on whether, at the time of the arrest, it was reasonable for the officer to believe that the defendant had committed or was committing an offense. *Beck v. Ohio*, 379 U.S. 89, 91 (1964). This standard will be discussed in more detail in connection with the district court's grant of summary judgment.

The court based its decision, in part, on the police report, which discussed the evidence presented to Officer Darr prior to his arrest of Reynolds. In sum, the report provided that:

> Jamison showed Darr a computerized phone log displaying numerous phone calls from Reynolds. She told Darr she'd received five phone calls that day, and she considered several of those to be threatening. Darr then went to Reynolds, questioned him, and arrested him for harassment by telephone.

*Reynolds I*, slip op. at 4. In the court's view, these undisputed facts demonstrated that Darr had probable cause

to arrest Reynolds. Additional discovery would not uncover any disputed facts material to this central question. In addition, the court discussed Reynolds' subsequent guilty plea to the telephone harassment charge. The court regarded the guilty plea as conclusive evidence that Officer Darr had probable cause to arrest Reynolds. Because of the preclusive effect of the guilty plea, the court determined that additional discovery was not necessary in relation to the July 12, 2004 arrest.

Reynolds now argues that the district court's order precluding discovery with respect to the July 12, 2004 arrest was an abuse of discretion because: (1) the decision was based on clearly erroneous factual findings, and (2) the decision was based on an erroneous conclusion of law. We reject both contentions.

As for the factual findings, Reynolds argues that the district court abused its discretion by relying on facts in dispute. First, Reynolds asserts that, in light of his denial to Officer Darr of Jamison's allegations, the court abused its discretion by relying on the fact that Jamison had received threatening phone calls. There is no dispute that Reynolds denied making the threatening phone calls. Officer Darr presumably found Jamison's account of the threatening phone calls to be more credible than Reynolds' denial. When acting on the complaint of a reasonably believable putative victim, an officer "[is] under no constitutional obligation to exclude all suggestions that the witness or victim is not telling the truth." *Beauchamp v. City of Noblesville, Indiana*, 320 F.3d 733, 743 (7th Cir. 2003). Reynolds' denial does not negate probable cause for his arrest; therefore, the district court did not abuse its discretion by relying on the fact that Jamison received threatening phone calls from Reynolds in deciding to preclude discovery.

Second, Reynolds states that both he and Jamison placed telephone calls to each other throughout the course of their

relationship. Reynolds argues that, because over the course of their tumultuous relationship calls were made by both parties, the number of allegedly threatening phone calls relied upon by Officer Darr to make the July 12, 2004 arrest did not amount to harassment. Again, this allegation is not material nor are the relevant facts in dispute. Whether Jamison also placed calls to Reynolds does not bear on whether, at the time he arrested the plaintiff, Officer Darr had probable cause. If Officer Darr reasonably believed that Reynolds had committed the crime of telephone harassment, then he had probable cause to arrest the plaintiff. Therefore, the court did not abuse its discretion in precluding discovery as to the July 12th arrest.

Third, Reynolds asserts that Jamison only mentioned the threatening calls after Darr questioned her about Reynolds' complaint about the dog dispute. The fact that Reynolds originally called the police concerning the dispute over a dog and Jamison only discussed the calls after being questioned by Officer Darr is immaterial and is not in dispute. None of the material facts relied upon by the district court were in dispute and, thus, the court did not abuse its discretion in denying discovery as to the July 12, 2004 arrest.[3]

---

[3] Judge Rovner, partially dissenting, believes that Reynolds should have been afforded an opportunity to "test" the contents of the police report through discovery. The three factual challenges that he raises—that he denied placing a harassing call, that he and Jamison exchanged a number of calls with each other over the course of their relationship and that he called the police first—in no way challenge the contents of the police report. Where the plaintiff in a § 1983 case fails to challenge any of the factual underpinnings alleged in a police report, it is appropriate for the district court to deny discovery and rely on the police report in granting summary judgment to the defendant police

(continued...)

The plaintiff next argues that the district court abused its discretion by ruling that Reynolds' prior guilty plea was conclusive evidence that Darr had probable cause at the time of the arrest and, thus, that additional discovery regarding the July 12 arrest was unnecessary. Since Reynolds was convicted in Illinois state court, we must look to the law of Illinois to determine the actual effect of his guilty plea. *See Allen v. McCurry,* 449 U.S. 90, 101 (1980) (holding that federal courts are to give judgments of state courts the same preclusive effect in federal actions under § 1983 that they would be given under the state's own law). The Illinois Supreme Court has previously held that a guilty plea "is an admission which may be received against him in a subsequent proceeding," *See, e.g.*, *Smith v. Andrews*, 203 N.E.2d 160, 163 (Ill. 1965). However, more recently, the Illinois Supreme Court stated that application of collateral estoppel with respect to a guilty plea must be determined on a case-by-case basis. *Talarico v. Dunlap*, 685 N.E.2d 325, 332 (Ill. 1997) (taking into account both the claimant's "incentive to litigate" the charges against him in state court and the "seriousness of the allegations or the criminal charge at the prior hearing").

While it does not appear that the district court analyzed Reynolds' criminal conviction in a way that would satisfy *Talarico*, the district court's decision to preclude discovery did not solely, or even predominantly, rest on the conclusion that Reynolds' prior guilty plea constituted

---

[3] (...continued)

officer. *See Woods v. City of Chicago*, 234 F.3d 979, 991 (7th Cir. 2000) (affirming the district court's grant of summary judgment where the plaintiff "did not present anything that would create a genuine issue of material fact nor did he point to any specific controverted factual issue that he would be able to present after conducting depositions.").

conclusive evidence of probable cause. Importantly, the court concluded that the evidence presented in the police report was sufficient to demonstrate that Darr had probable cause and did not find any of Reynolds' arguments to the contrary convincing. Therefore, we conclude that any error on the part of the district court in relying on Reynolds' guilty plea in limiting discovery was harmless. Because of the court's additional analysis, it was not an abuse of discretion for the court to conclude that discovery with respect to the July 12 arrest was unnecessary.

### 2. The November 28, 2004 Arrest

As for the November 28, 2004 arrest, the district court allowed Reynolds to engage in limited discovery. The court concluded that there were only two disputed facts relevant in determining the defendants' summary judgment motions and, thus, limited discovery to: (1) whether Officer Darr responded to a police dispatch; and (2) whether Darr checked his on-board computer to verify the terms of the order of protection before arresting Reynolds. *Reynolds I*, slip op. at 5-6. Both of these issues are relevant to whether Officer Darr had probable cause to arrest Reynolds, or whether, as Reynolds argues, Darr was motivated by an alleged personal relationship with Jamison.

Reynolds first argues that there was no legal basis for the court to limit discovery in this manner. As has been noted, the district court assessed the need for discovery in light of Darr's motion for summary judgment on grounds of qualified immunity, and accordingly limited the discovery order to issues of fact concerning whether Darr had probable cause to arrest Reynolds on November 28, 2004. The court did not abuse its discretion in limiting discovery

to issues of material fact tending to prove or negate that Officer Darr had probable cause.

Reynolds also argues that the district court abused its discretion in limiting discovery by relying on erroneous findings of fact, namely by relying only on the facts as asserted by the defendants. Specifically, Reynolds asserts that the court failed to consider that Reynolds denied engaging in any of the conduct alleged by Jamison. The fact that Reynolds denied the allegation is not disputed. In determining whether probable cause existed, the district court correctly concluded that discovery concerning the fact of Reynolds' denial was not necessary. To the extent Reynolds is arguing that his denial should have negated probable cause, that contention will be discussed in the summary judgment section which follows. Reynolds also asserts that the court failed to consider that Darr had no reasonable basis to conclude that Reynolds was in violation of the Emergency Order of Protection. The limited discovery ordered by the court, however, expressly allowed examination of this issue. Therefore, the district court's decision to limit discovery as to the November 28, 2004 arrest did not constitute an abuse of discretion.

Many of Reynolds' arguments in opposition to the district court's order limiting discovery actually concern his disagreement with the court's finding that Officer Darr had probable cause for his arrests. These arguments are better invoked in opposition to the district court's grant of summary judgment and will be addressed below.

## B. *Summary Judgment*

We review a district court's denial of summary judgment on qualified immunity grounds de novo. *Leaf v. Shelnutt*, 400 F.3d 1070, 1077 (7th Cir. 2005). Summary judgment is

proper where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The evidence and all inferences that reasonably can be drawn from the evidence are construed in the light most favorable to the non-moving party, here, the plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Relevant to the present case, in order to prevail on a Section 1983 claim, the claimant must allege "(1) that he was deprived of a right secured by the Constitution or laws of the United States, and (2) that the deprivation was visited upon [him] by a person or persons acting under color of state law." *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004). Additionally, Reynolds contends that Jamison is also liable under § 1983 because she conspired with Darr to violate his constitutional rights. "To establish § 1983 liability through a conspiracy theory, a plaintiff must demonstrate that: (1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights; and (2) those individual(s) were willful participant[s] in joint activity with the State or its agents." *Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003) (internal citation and quotation marks omitted). Therefore, the § 1983 claim against Jamison is dependent on the validity of the claim against Darr.[4]

Governmental actors performing discretionary functions are entitled to qualified immunity and are shielded

---

[4] In other words, if Darr had probable cause to arrest Reynolds, Darr did not violate Reynolds' constitutional rights, and therefore, Jamison could not have conspired with Darr to do so. Thus, both Darr and Jamison would be entitled to summary judgment.

from liability, unless the plaintiff can show a violation of a constitutional right, and, if successful in showing a constitutional violation, demonstrate that the right was clearly established at the time of the alleged violation. *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001). This analysis turns on whether a reasonable officer would have known that his actions were unconstitutional. *Id.* at 202.

Here, Reynolds alleges that Darr violated his Fourth Amendment right to be free from unreasonable seizure. Whether his claim merits redress depends on whether, at the time of the arrest, Officer Darr had probable cause. A finding of probable cause absolutely bars a claim for false arrest under § 1983. *Smith v. City of Chicago*, 913 F.2d 469, 473 (7th Cir. 1990). Probable cause to arrest existed if, at the time the decision was made, "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [individual] had committed or was committing an offense." *Beck*, 379 U.S. at 91. The reasonableness of the seizure turns on what the officer knew, not whether he knew the truth or whether he should have known more. *Gramenos v. Jewel Cos.*, 797 F.2d 432, 439 (7th Cir. 1986); *see also Qian v. Kautz*, 168 F.3d 949, 953 (7th Cir. 1999) (holding that an officer's belief does not have to be correct or even more likely true than false so long as it is reasonable). The fact that an officer later discovers additional evidence unknown to her at the time of the arrest, even if it tends to negate probable cause, is irrelevant—we only care about what the officer knew at the time the decision was made. *Qian*, 168 F.3d at 954.

### 1. The July 12, 2004 Arrest

With respect to the July 12, 2004 arrest, Officer Darr first argues that Reynolds cannot prevail on his § 1983

claim because the officer had probable cause to arrest and is, therefore, entitled to qualified immunity. In order to defeat Darr's motion for summary judgment on these grounds, Reynolds must present sufficient evidence that would allow a jury to conclude that Officer Darr unreasonably believed that Reynolds had committed the offense of telephone harassment and, thus, lacked probable cause. Reynolds has not met this burden.

The undisputed facts demonstrate that Darr had probable cause to arrest Reynolds on July 12, 2004. Officer Darr contacted Jamison in response to the dispute regarding Reynolds' dog, at which time Jamison revealed to Darr that Plaintiff had called her several times that day—at least one of such calls she considered threatening—and that he had made harassing phone calls to her at work over a period of months. We have repeatedly held that a complaint of the putative victim or single witness is generally sufficient to establish probable cause, unless the officer has a reason to question the witness' account. *See Beauchamp*, 320 F.3d at 743; *Woods v. City of Chicago,* 234 F.3d 979, 987 (7th Cir. 2000); *Guzell v. Hiller*, 223 F.3d 518, 519-20 (7th Cir. 2000); *Tangwall v. Stuckey*, 135 F.3d 510, 516 (7th Cir. 1998); *Gerald M. v. Conneely,* 858 F.2d 378, 381 (7th Cir. 1988); *Gramenos,* 797 F.2d at 439. Further, some of Jamison's co-workers, who had heard Reynolds threaten her on the phone that day, relayed that information to Darr. Additionally, Officer Darr listened to a number of voicemails that Jamison had saved on her work phone and reviewed a computer print-out logging the number of times that Reynolds had called Jamison at work. In light of all of this information, Darr determined that Reynolds had committed the offense of harassment by telephone and arrested Reynolds on July 12, 2004.

Here, Reynolds raises arguments in opposition to summary judgment similar to those raised against the

order limiting discovery. We reject these arguments here as well. Reynolds contends that the district court erred in granting summary judgment because disputed material facts exist. First, Reynolds argues that Officer Darr did not have probable cause because Reynolds originally contacted the police regarding his attempt to retrieve his dog and other possessions from Jamison. Regardless of who initially contacted the police, Darr's investigation revealed that Reynolds' conduct was criminal in nature. Second, while Reynolds does not dispute that he made phone calls to Jamison, he argues that he was falsely arrested because Jamison also made phone calls to Reynolds. Officer Darr uncovered no evidence that Jamison's calls also were criminal in nature, and once he reasonably believed that Reynolds had committed a crime, he had probable cause and was under no duty to investigate further. *See Pasiewicz v. Lake Forest Preserve Dist.*, 270 F.3d 520, 524 (7th Cir. 2001). The facts presented by Reynolds therefore do not undermine the district court's finding that Officer Darr had probable cause to arrest Reynolds on July 12th.

Based on the knowledge he gained from Jamison and her co-workers, a reasonably prudent officer in Darr's position would have believed that Reynolds had committed the offense of telephone harassment. Therefore, Officer Darr had probable cause to arrest Reynolds on July 12, 2004, *see Beck*, 379 U.S. at 91, and did not violate Reynolds' Fourth Amendment right to be free from unreasonable seizure, *see Smith*, 913 F.2d at 473. Because Reynolds cannot show that Officer Darr violated his constitutional rights, he cannot satisfy the first prong of the *Saucier* test and Darr is therefore entitled to qualified immunity. *Saucier*, 533 U.S. at 201-02.

The fact that Officer Darr had probable cause to arrest Reynolds is sufficient to end our inquiry as to the July 12th arrest. However, Darr raises two affirmative bars to

Reynolds' suit based on Reynolds' guilty plea to the offense of harassment by telephone for making a threatening call between May 2004 and July 2004. We reject these arguments, but will address them in an attempt to clarify an unsettled area of law.

First, Darr argues that Reynolds' § 1983 claim, with respect to the July 12, 2004 arrest, is barred by the doctrine of collateral estoppel. As has been noted, any preclusive effect of a guilty plea on subsequent litigation must be determined on a case-by-case basis. *See Talarico*, 685 N.E.2d at 332. Moreover, the existence of probable cause and a finding of guilt are two distinct issues. Because Reynolds did plead guilty to making a threatening phone call to Jamison,[5] it is tempting to say, *ex ante*, that Officer Darr's belief that Reynolds had committed the offense of telephone harassment must have been reasonable. However, there is no evidence that Reynolds' guilty plea established what Darr knew at the time of the arrest—the relevant time period for the probable cause analysis. Thus, we decline to conclude that Reynolds' § 1983 claim is barred by collateral estoppel. Regardless, as discussed above, Officer Darr had probable cause to arrest Reynolds on July 12, 2004 and therefore did not violate Reynolds' constitutional rights.

Darr also argues that *Heck v. Humphrey*, 512 U.S. 477 (1994), bars Reynolds' claim for false arrest. The broad rule of *Heck* is that a plaintiff convicted of a crime in state court cannot bring a § 1983 claim which, if successful,

---

[5] Reynolds argues that his guilty plea cannot have a preclusive effect because he pleaded guilty to one phone call during the time period of May 2004 through July 2004, not to a phone call on July 12, 2004. This argument is frivolous. Although we reject Officer Darr's collateral estoppel argument, we do not do so on this ground.

would imply that his conviction was invalid, unless and until the conviction has been reversed on appeal or otherwise invalidated. *Id.* at 486-87. In *Booker v. Ward*, 94 F.3d 1052, 1056 (7th Cir. 1996), this court concluded that, according to *Heck*, a plaintiff need not have his conviction nullified before pursuing a false arrest claim if that false arrest "does not inevitably undermine a conviction; one can have a successful wrongful arrest claim and still have a perfectly valid conviction." We re-affirmed *Booker v. Ward*'s bright-line rule in *Wallace v. City of Chicago*, 440 F.3d 421, 423 (2006), *aff'd*, 127 S.Ct. 1091 (2007), holding that a claim for false arrest, because it does not by its nature call into question the validity of a conviction, may go forward immediately, without nullification of the underlying criminal conviction. In the present case, Reynolds' § 1983 claim for false arrest does not impugn the validity of his underlying conviction for the offense of telephone harassment. Whether Officer Darr had probable cause to arrest Reynolds has no bearing on the validity of his subsequent guilty plea and criminal conviction.

Regardless of these additional arguments, the undisputed facts clearly demonstrate that Officer Darr had probable cause to arrest Reynolds on July 12, 2004 and thus is entitled to qualified immunity. We therefore affirm the district court's grant of summary judgment as to the July 12, 2004 arrest.

### 2. The November 28, 2004 Arrest

With respect to the November 28, 2004 arrest, the undisputed facts demonstrate that Officer Darr had probable cause to arrest Reynolds. Officer Darr was contacted by his supervisor, Sergeant Morgan, who informed him that there was a disturbance involving Jamison and Reynolds that warranted an investigation of a possible violation of an order of protection. While en

route to locate Reynolds, Darr learned through the police dispatcher that there was, in fact, an order of protection in place. When Darr located Reynolds and pulled his vehicle over, he checked the LEADS/SOS system through his on-board computer, which also confirmed that there was an order of protection in place. Specifically, the order of protection that Darr viewed on his on-board computer mandated that Reynolds stay, at a minimum, 500 feet away from Jamison's residence. From his experience as a police officer, Darr knew that Reynolds' grandparents' house was located within 500 feet of Jamison's home. There was nothing in LEADS which indicated that there was any type of exception or amendment that would allow Reynolds to be within 500 feet of Jamison's home. Despite the information provided by LEADS, Reynolds maintained that he was allowed to go to his grandparents' house but could provide no documentation that the order of protection would allow him to do so.[6] To double check, Darr also contacted the Champaign County Jail Records Division to determine the specific provisions of the order of protection, and again found no exception to the order. Based on the totality of these facts, we conclude that Darr had probable cause to arrest Reynolds for violating the order of protection on November 28, 2004.

Reynolds argues that there are several material facts in dispute which preclude summary judgment. First, Reynolds contends that because Darr did not directly

---

[6] Although not argued by the parties, it is not clear how this purported "exception" is really an exception at all since the Order of Protection still requires Reynolds to remain 500 feet from Jamison even when he is visiting his grandparents. "When Respondent visits his relatives on East Pennsylvania, respondent must use Philo Road entrance and exit only and must remain 500 feet away from protected persons and places at all times." (Appellant Brief at 7.)

talk to Jamison on the evening of November 28, 2004, he was unable to assess her credibility, and thus, it was unreasonable for him to rely on statements from the putative victim. This argument lacks merit. Officer Darr acted on information from Sergeant Morgan of an allegation by Jamison that Reynolds had violated an order of protection.[7] *See United States v. Hensley*, 469 U.S. 221, 232-33 (1985) (allowing a law enforcement officer to effect an arrest in reliance on information supporting probable cause supplied by other officers). Darr also received a METCAD dispatch ticket stating that Reynolds had possibly violated an order of protection. Moreover, Darr had already had an opportunity to assess Jamison's credibility given his previous interaction with her and had no reason to believe that Jamison's call to 911/METCAD was not credible.

Reynolds also argues that the reasonableness of Darr's reliance on the order of protection in the LEADS system is

---

[7] Reynolds' argument that probable cause did not exist because the collective knowledge doctrine does not apply is misplaced. Under the collective knowledge doctrine, the knowledge of one police officer is imputed to other officers when they are in communication regarding a suspect. *See United States v. Sawyer*, 224 F.3d 675, 680 (7th Cir. 2000) (citing *United States v. Hensley*, 469 U.S. 221, 232-33 (1985)). This doctrine permits arresting officers to rely on the *knowledge*, but not necessarily the conclusions (such as whether probable cause exists), of other officers. Thus, an arresting officer need not be personally aware of all of the specific facts supporting probable cause, so long as an officer who is aware of such facts relay them to the officer effecting the arrest. *See Hensley*, 469 U.S. at 232-33. Here, Darr was not relying on information from another law enforcement agency or police officer that probable cause existed to arrest Reynolds. Rather, Darr arrived at his own conclusion that probable cause existed in light of the facts and information that he gathered through his own investigation.

in dispute. Once he explained to Officer Darr that there was an exception to the order of protection, Reynolds argues that Darr should have either believed him or allowed him to retrieve a copy of the order from his home. This argument also fails. Darr received, through his supervisor, credible information that Reynolds had allegedly violated a protective order and after consulting every source customarily relied upon by police officers and having found no exception to the order, Darr could not be expected to believe Reynolds' declarations of innocence. In any case, once Darr had probable cause, he was under no constitutional obligation to further investigate Reynolds' possible innocence. *See Beauchamp*, 320 F.3d at 743; *Pasiewicz*, 270 F.3d at 524.

Further, to the extent Officer Darr violated Reynolds' constitutional rights by not allowing him to retrieve his personal copy of the Order of Protection, this constitutional violation was not clearly established at the time of the incident, and therefore Officer Darr is still entitled to qualified immunity. *Saucier*, 533 U.S. at 201-02. On the whole, the undisputed facts demonstrate that Officer Darr had probable cause to arrest Reynolds on November 28, 2004. Reynolds has not raised any arguments sufficient to rebut this conclusion. Accordingly, Officer Darr is entitled to qualified immunity, and we therefore affirm the district court's grant of summary judgment.

The policy considerations underlying the qualified immunity doctrine also direct this result. Law enforcement officers often encounter competing and inconsistent stories. If officers were required to determine exactly where the truth lies before acting, the job of policing would be very risky financially as well as physically. *Askew v. City of Chicago*, 440 F.3d 894, 896 (7th Cir. 2006). "Police would respond by disbelieving witnesses (or not acting on allegations) lest they end up paying damages, and the public would suffer as law enforcement declined." *Id.*

### III.  Conclusion

For the foregoing reasons, we AFFIRM the district court's order limiting discovery and grant of the defendants' motion for summary judgment.

ROVNER, *Circuit Judge*, concurring in part and dissenting in part.  I join my colleagues in affirming the grant of summary judgment as to the November 28, 2004 arrest, but dissent with respect to the July 12, 2004 arrest. In his complaint, Reynolds asserted what are conceded to be viable claims for wrongful arrest in violation of state and federal law. R. 1 Counts I-III. He was entitled to discovery on those claims, including in particular the right to depose the two defendants, Darr and Jamison, in order to determine what Jamison told Darr about Reynolds' phone calls and thus to determine what Darr knew when he made the decision to arrest Reynolds for telephone harassment. But he was never given that opportunity. Instead, the district court treated as conclusive the version of events that Darr set forth in his police report concerning the arrest and the fact that Reynolds later pleaded guilty to telephone harassment. R. 40 at 4. In both respects, I believe the district court erred.

As my colleagues point out, Reynolds' ability to recover on his claim that his July 12 arrest amounted to an unlawful seizure in violation of the Fourth Amendment depends on whether Darr had probable cause to arrest him. *Ante* at 14. The assessment of probable cause in turn focuses on the facts known to Darr at the time of the arrest. *Ante* at 14.

Darr's decision to arrest Reynolds was based primarily on the information that Jamison provided to him: what she told him about Reynolds' phone calls, what she showed him on (or printed out from) her computer, and so forth. This is clear both from the affidavit that Darr submitted in support of his motion for summary judgment, R. 18-2 ¶¶ 4-5, 7, 9-15, as well as Darr's police report, R. 23-8 at 3-5. Only two individuals know what Jamison conveyed to Darr about her telephonic contact with Reynolds on July 12: Darr and Jamison. Deposing those two individuals consequently was the only means Reynolds had at his disposal to develop the record as to what transpired between Jamison and Darr and what Darr knew when he decided to arrest Reynolds.[1] It is certainly possible that Darr and Jamison, if and when deposed about the July 12 arrest, might testify entirely consistently with their affidavits, with Darr's report, and with one another. But there is a reason why we allow the parties to depose one another and their witnesses during the discovery process. Affidavits, responses to interrogatories, and other written statements are typically drafted by lawyers and by their nature are self-serving. *See, e.g.*, *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003). Even something like a police report, prepared after the fact to document what the police officer observed, what he knew, and why he did what he did, is often written with a calculating eye to litigation and to the

---

[1] Reynolds, of course, knows the nature of his telephonic contact with Jamison on July 12, 2004 as well as what he himself told Darr about the telephone calls. Yet, as my colleagues rightly point out, Darr was not required to believe Reynolds or to question Jamison's credibility simply because Reynolds disputed Jamison's allegations. *Ante* at 8. This makes it all the more clear, however, why Jamison and Darr are *the* key witnesses vis-à-vis the July 12 false arrest claim.

author's potential liability. There is no reason to believe that such written statements invariably tell the complete and unvarnished truth, and that is why the parties are entitled to take depositions. *Cf. Shoen v. Shoen*, 5 F.3d 1289, 1297 (9th Cir. 1993) ("Written interrogatories are rarely, if ever, an adequate substitute for a deposition when the goal is a witness's recollection of conversations. . . . Only by examining a witness live can a lawyer use the skills of his trade to plumb the depths of a witness' recollection . . . .").

Reynolds' need to depose Darr and Jamison was something that his counsel made clear to the district court at every opportunity. The point was made repeatedly both in Reynold's opposition to Darr's motion to stay discovery, *see* R. 25 (passim), and in the memoranda he filed in response to the defendants' motions for summary judgment, R. 22 at 3, 11-13, 17-18, 19, 24; R. 36 at 4, 11-13, 23. Reynolds also specifically sought relief pursuant to Federal Rule of Civil Procedure 56(f). R. 23-2, 23-3.[2]

Yet the district court came to the conclusion that discovery was unnecessary as to the events leading up to Reynolds' arrest on July 12. One of the two bases for the court's decision that discovery was unnecessary, and

---

[2] Darr contends that Reynolds never filed the requisite affidavit in support of his Rule 56(f) motion. Reynolds did support his motion with an affidavit, although it appears that the signature page was inadvertently omitted. *See* R. 23-5. Darr also suggests that the affidavit did not sufficiently explain why discovery was necessary in order to respond to the defendants' motions for summary judgment, but in my view the case for discovery was so straightforward (and made so repeatedly in the various documents that Reynolds filed) that little elaboration was required. In any case, the district court did not rely on any insufficiency in the affidavit in concluding that discovery was unwarranted.

that the claims related to the July 12 arrest could be resolved by way of summary judgment, was that the relevant facts were set forth in Darr's police report. "The police report discusses the evidence presented to Darr prior to the arrest," the court observed. R. 40 at 4. "Jamison showed Darr a computerized phone log displaying numerous phone calls from Reynolds. She told Darr she'd received five phone calls that day, and she considered several of those to be threatening. Darr then went to Reynolds, questioned him, and arrested him for harassment by telephone." *Id.* Evidently accepting the representations set forth in Darr's report as undisputed and true, the court concluded that "[n]othing in these facts suggests that discovery would lead to a triable issue." *Id.*[3] My colleagues acknowledge the court's reliance on Darr's report, noting that "the [district] court concluded that the evidence presented in the police report was sufficient to demonstrate that Darr had probable cause," *ante* at 11, and that "[i]n the court's view, these undisputed facts demonstrated that Darr had probable cause to arrest Reynolds," *ante* at 7-8. They also endorse this treatment of Darr's report, remarking that "[n]one of the material facts relied upon by the district court were in dispute and, thus, the court did not abuse its discretion in denying discovery as to the July 12, 2004 arrest." *Ante* at 9.

The problem, of course, is that the representations in Darr's report (as to what Jamison said to him, what she showed him, and what Darr otherwise knew) are not undisputed. They are untested. And they are untested

---

[3] Reynolds' decision to plead guilty to telephone harassment was also among the facts that the court relied on in concluding that discovery was unnecessary. R. 40 at 4. The relevance of the guilty plea is discussed below.

because Reynolds has never been afforded the opportunity to question either Darr or Jamison about the contents of Darr's report. *See* n.1, *supra.* Absent the opportunity to depose the only two people with personal knowledge of what information Jamison conveyed to Darr, Reynolds could not possibly contest the veracity of Darr's report. *That* is the only sense in which the substance of Darr's report is undisputed.[4]

The contents of Darr's report thus cannot be accepted as fact. Darr's report is nothing more than his out-of-court statement as to what he was told by Jamison and what information she gave him. Certainly it is evidence of what Darr knew when he made the decision to arrest Reynolds, and in that sense it is relevant to the determination of whether he had probable cause to make the arrest. But it cannot be treated as the final word on the subject; the report is not, for example, a judicial finding that might be entitled to preclusive effect in this litigation. The defendants can no more rely on Darr's report to preempt all inquiry into what he knew than an employer charged with discriminatory discharge can rely on the written documentation in its personnel file as conclusive proof of the reason why the plaintiff was fired. Reynolds is entitled to look behind the report and to question both its author and Jamison about the contents of that report. This is routine in false arrest cases.

My colleagues rely on *Woods v. City of Chicago*, 234 F.3d 979, 991 (7th Cir. 2000), for the proposition that it was

---

[4] As far as I can determine, the only material fact set forth in Darr's report that Reynolds himself may have conceded is that he telephoned Jamison on July 12, 2004. *See* R. 23-8 at 6. Reynolds has expressly denied having called her five times. R. 36-3 at 3 ¶ 12. He has also expressly denied having threatened Jamison, her son, or her dog. R. 22-2 at 3 ¶ 12.

appropriate for the district court to deny Reynolds the opportunity to take discovery concerning Darr's report and then to rely on that report in granting summary judgment. *Ante* at 9-10 n.3. With respect, I submit this grants an overly broad sweep to a dictum in *Woods* arising from facts that are readily distinguishable. Although the plaintiff in *Woods*, like Reynolds here, argued that he was never given the opportunity to depose either the police officers who had arrested him for assault or the (putative) assault victim whose complaint to the police had triggered the arrest, there were key circumstances present in *Woods* that are missing here. The victim in *Woods* had filed a verified criminal complaint with the police narrating the alleged assault, and the arresting officers' report "essentially repeated this account of the incident[.]" 234 F.3d at 983. The *Woods* plaintiff did not dispute that the officers made the decision to arrest him based on the victim's complaint. *See id.* at 984, 990. More importantly, he did not contest the facts that were alleged in that complaint and repeated in the arrest report; on the contrary, he relied on (and therefore admitted) the accuracy of both the complaint and the report in pursuing his false arrest claim. *See id.* at 989, 990, 991. Against that backdrop, the *Woods* panel naturally concluded that there was no point in allowing the plaintiff to depose the victim and the arresting officers before resolving the validity of the arrest on summary judgment. *Id.* at 991. The court made that point in the course of explaining why it "would most likely affirm" the district court's grant of summary judgment even if (contrary to its earlier conclusion) the lower court had not properly given the plaintiff adequate notice that it was converting the defendant's motion to dismiss into one for summary judgment and an opportunity to respond. *Id.* Placed in context, *Woods*' unremarkable dictum lends no support to the notion that a police officer sued for false arrest may rely

on his own report to foreclose inquiry into what facts were communicated to him prior to the arrest. "What was conveyed to the officers goes to the heart of probable cause," *Washington v. Haupert*, 481 F.3d 543, 549 (7th Cir. 2007), and where, as here, the plaintiff lacks personal knowledge of what the putative victim told the arresting officer, he is entitled to discovery on that score before the court treats the officer's version of events as undisputed fact.

The other basis for the district court's conclusion that discovery was unnecessary as to the July 12 arrest was Reynolds' subsequent plea of guilty to the charge of telephone harassment. R. 40 at 4. Although the court did not elaborate on the reasons why it thought that Reynolds' guilty plea was relevant, the court apparently agreed with Darr that the plea foreclosed Reynolds from arguing that his arrest was wrongful in violation of either federal or state law. Darr maintained that *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364 (1994), barred Reynolds' section 1983 claim because a finding that Reynolds was arrested without probable cause would necessarily call into question the validity of his conviction, which Reynolds had not succeeded in having set aside or otherwise nullified. R. 17 at 5. Darr argued that the parallel state law claims were precluded on the basis of collateral estoppel, because Reynolds' conviction for telephone harassment necessarily reflected an adjudication that he was properly arrested on that same charge. *Id.* at 5-7. Darr has repeated these same arguments on appeal in defense of the district court's judgment. Neither argument withstands scrutiny, however.

Darr's reliance upon the rule of *Heck v. Humphrey* as a bar to the section 1983 claim is mistaken for the reasons set forth in *Wallace v. City of Chicago*, 440 F.3d 421, 425-29 (7th Cir. 2006), *aff'd*, 127 S. Ct. 1091 (2007). Probable cause to arrest is an issue that is entirely distinct from

sufficiency of evidence to convict. *See*, *e.g.*, *Draper v. United States*, 358 U.S. 307, 311-12, 79 S. Ct. 329, 332 (1959) (noting "the difference between what is required to prove guilt in a criminal case and what is required to show probable cause for arrest or search"); *Simpson v. Rowan*, 73 F.3d 134, 136 (7th Cir. 1995) ("an illegal search or arrest may be followed by a valid conviction"). Consequently, a finding that Darr lacked probable cause to arrest Reynolds would not call into question the validity of his conviction, as my colleagues agree. *Ante* at 18.

The notion that the doctrine of collateral estoppel bars the state law claims is equally flawed. To begin with, as my colleagues point out, the district court never engaged in the case-sensitive scrutiny called for by the Illinois Supreme Court's decision in *Talarico v. Dunlap*, 685 N.E.2d 325, 332 (Ill. 1997). *Ante* at 10. Such an examination would reveal that at least two of the criteria for the application of collateral estoppel, *see Talarico*, 685 N.E.2d at 328, are not satisfied. First, the issue resolved by Reynolds' guilty plea and conviction is not identical to the issue presented by the state claims he is pursuing here. Again, whether there was sufficient evidence to support the defendant's conviction of a crime is a distinct question from whether the arresting officer had probable cause to believe that the defendant committed that crime. Second, the propriety of Reynolds' arrest was never litigated in the state criminal proceeding, *see ante* at 17, and the finding that Reynolds was guilty of telephone harassment in no sense depended on the validity of his arrest. *See Haring v. Prosise*, 462 U.S. 306, 315-16, 103 S. Ct. 2368, 2374-75 (1983). Convictions are often if not usually founded on evidence that is broader than the evidence known to the police at the moment of arrest, and the record suggests that is true here. Darr's own police report, for example, indicates that after Reynolds' arrest,

Jamison delivered to Darr a compact disc containing seventy-two voicemails from Reynolds. R. 23-8 at 7.

For all of these reasons, I believe that it was error for the district court to enter summary judgment against Reynolds as to the July 12, 2004 arrest without first permitting him to conduct discovery on those claims, including the depositions of Jamison and Darr. To that extent, I respectfully dissent.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*