NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 14, 2008[*]
Decided July 1, 2008

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

JOHN L. COFFEY, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 07-1774

| | |
|---|---|
| JOHN E. DAVIS, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Central District of Illinois. |
| *v.* | No. 04-1389 |
| EDDIE SAMALIO and ODEIDA DALMASI, | Harold A. Baker, |
| *Defendants-Appellees.* | *Judge.* |

**O R D E R**

Federal inmate John Davis filed suit under *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), claiming that the defendants, employees of the Federal Correctional Institute in Pekin, were deliberately indifferent to his fractured wrist.

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. See FED. R. APP. P. 34(a)(2).

The district court granted summary judgment to the defendants. Davis appeals that judgment and also challenges several discovery rulings. We affirm.

On October 27, 2003, Davis slipped on a chair in his prison cell and landed on his wrist. X-rays taken at the prison's medical unit showed a wrist fracture, and so Dr. Odeida Dalmasi, the prison physician, recommended that Davis be taken to the local hospital. At the hospital, Davis saw Dr. Clark, an orthopedic surgeon. Davis received pain medication and a long-arm cast on his wrist. Dr. Clark also requested that Davis receive a second round of x-rays by November 6th for him to review, that Davis be provided with more pain medication, and that Davis return in four weeks to change the cast.

Davis alleges that on October 31 he sent a written request for the prison to schedule the second round of x-rays. He provided no evidence of the request, and the prison has no record of it. On November 10 Davis sent another written request to the prison concerning his wrist, and later that day he received a response telling him to watch for a future "call out." Sometime between November 10 and 14, he went to the medical unit and confronted the health-services manager, Eddie Samalio, asking why his medical needs were being ignored. On November 14 Davis saw Dr. Dalmasi, who noticed for the first time that Dr. Clark had requested a second round of x-rays and as a result immediately had the x-rays taken and prescribed pain medication. Davis alleges that Dr. Dalmasi also informed him that his wrist had healed incorrectly, but Dr. Dalmasi denies ever saying this. The second round of x-rays were not sent to Dr. Clark.

On November 25 Davis saw Dr. Clark for his follow-up appointment to replace his cast. A third set of x-rays were also taken; these films revealed that the wrist was healing properly. Davis alleges that Dr. Clark told him that the wrist had not healed properly, but nothing in the record supports this allegation. Two months later, the prison's medical unit gave Davis a fourth x-ray and concluded that the wrist fracture had healed properly. The medical staff also prescribed additional pain medication and extended Davis's pass for a lower bunk for three more months.

Davis filed suit against the defendants, alleging that they had violated the Eighth Amendment because they were deliberately indifferent to his fractured wrist. He claimed that the prison officials delayed his second round of x-rays, causing his wrist to heal improperly. Over the following year the district court extended discovery on three separate occasions. After the second extension, the defendants moved for summary judgment. Davis responded to the defendant's motion but also moved to continue discovery and to subpoena Dr. Clark. The district court denied Davis's motions, but it nevertheless gave him an additional 45 days to depose Dr. Clark by written questions under FED. R. CIV. P. 31 in lieu

of an oral deposition. Davis failed to take advantage of that opportunity; instead, he filed yet another motion to extend discovery and to subpoena Dr. Clark.

The district court denied Davis's motions and granted the defendants' motion for summary judgment. The court found that Davis had presented no "verifying medical evidence" that his wrist had failed to heal properly. And it determined that the defendants' failure to perform a second round of x-rays by November 6th or send the x-rays to Dr. Clark did not amount to deliberate indifference.

Davis initially argues that the district court erred in denying his motions to continue discovery and to subpoena Dr. Clark. The court's denials, he says, prohibited him from providing "verifying medical evidence" of the defendants' deliberate indifference. We review a district court's discovery rulings for an abuse of discretion, see, *e.g.*, *Reynolds v. Jamison*, 488 F.3d 756, 761 (7th Cir. 2007); *Brosted v. Unum Life Ins. Co. of Am.*, 421 F.3d 459, 463 (7th Cir. 2005), and we will reverse if "the denial of discovery resulted in actual and substantial prejudice," *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 646 (7th Cir. 2001).

The district court did not abuse its discretion in denying Davis's motions. The court extended discovery three times, including a final 45-day extension, at which time it informed Davis that he could submit written questions to Dr. Clark. Following this third extension, Davis did not seek discovery from Dr. Clark and, instead, filed yet another motion to continue discovery and to subpoena Dr. Clark. Because Davis had over a year to conduct discovery and was able to depose both defendants during that time, we cannot say that he has suffered any actual or substantial prejudice.

Davis also argues on appeal that the district court incorrectly concluded that the defendants' actions did not amount to deliberate indifference. He contends that his wrist never healed properly because of the defendants' delay in procuring a second round of x-rays. We review the district court's grant of summary judgment de novo, drawing all reasonable inferences in the light most favorable to the non-moving party. *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006).

Prison officials violate the Eighth Amendment when they display deliberate indifference to a prisoner's serious medical condition. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Edwards v. Snyder*, 478 F.3d 827, 830-31 (7th Cir. 2007). To succeed on a deliberate-indifference claim, a prisoner must show both an objectively serious risk of harm and a subjectively culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Edwards*, 478 F.3d at 830-31. Where prison officials delay rather than deny medical treatment, the delay reflects deliberate indifference when it has a detrimental effect on the prisoner's health. *Walker v. Benjamin*, 293 F.3d 1030, 1038 (7th Cir. 2002). We require that the prisoner offer

"verifying medical evidence" that the delay caused some degree of harm. *Williams v. Liefer*, 491 F.3d 710, 714-15 (7th Cir. 2007).

Davis presented no competent medical evidence supporting the theory that the eight-day delay in procuring a second round of x-rays had a detrimental effect on his fractured wrist. Further, even assuming that Davis's fractured wrist qualifies as a serious medical need, he has presented no evidence suggesting that the defendants acted with deliberate indifference. Dr. Dalmasi ordered x-rays the day of the injury and sent Davis to the local hospital to receive specialized care from Dr. Clark. At the hospital Dr. Clark gave Davis a long-arm cast, prescribed pain medication, and, four weeks later, replaced the long-arm cast with a short-arm cast. And, between October 27 and January 27, Davis was given four rounds of x-rays, prescribed several types of pain medication, and offered various recreational and work-related restrictions. Davis's dissatisfaction with the treatment of his wrist notwithstanding, the defendants were not deliberately indifferent to his condition. See, *e.g.*, *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) ("Mere dissatisfaction or disagreement with a doctor's course of treatment is generally insufficient.").

AFFIRMED.